F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAY 07 2024 ★

LONG ISLAND OFFICE

RECEIVED
MAY 07 2024
EDNY PRO SE OFFICE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

MALACHY P. LYONS, JR.,

        Plaintiff,

            -v-

ALLSTATE INSURANCE COMPANY,

        Defendant.

-------------------------------------------------------------------X

Civil Action No.

**COMPLAINT**

Jury Trial Demanded

24CV 3370
(MM)

      MALACHY P. LYONS, Jr., Esq, pro se, alleges upon knowledge as to himself and his

own actions, and upon information and belief as to all other matters, as follows:

### The Parties to This Complaint

1. Plaintiff, Malachy P. Lyons, Jr., resides at 1440 Ackerson Boulevard, Bay Shore,

   New York 11706.  Plaintiffs telephone number is (631)-219-1505. The Plaintiffs e-

   mail Address is: splinterwone@aol.com.

2. Defendant, Allstate Insurance Company provides services to customers and

   businesses throughout New York State and throughout the United States.

   Allstate has a Legal Department with principle offices located at 2775 Sanders

   Road, Northbrook, Illinois 60062

### Basis for Jurisdiction:

3. Diversity of Citizenship under 28 U.S.C. Section 1332.  The Plaintiff is a citizen of

   the State of New York.  The Defendant is a corporation, with its principle place of

REC'D IN PRO SE OFFICE
MAY 7 '24 PM 1:30

business located in Northbrook, Illinois.  The Amount in controversy is more than $75,000, not counting interest and costs of court.

4. Federal Question Jurisdiction – under 28 U.S.C. Section 1331, Employment Retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. Section 2000 (Title VII), because Title VII prohibits retaliation against an employee who "has opposed any practice that is made an unlawful employment practice" under Title VII 42 U.S.C.  Age Discrimination under the Age Discrimination in Employment Act (ADEA).

### Statement of Claim:

5. The Plaintiff filed an EEOC Charge of Discrimination in May 2023.  The EEOC did not investigate and made no findings as to the merits of Plaintiffs claim and has issued a right to sue letter dated February 21, 2024. (Plaintiffs Exhibit "A").

6. Allstate for no non-discriminatory or legitimate employment or business reasons, engaged in an unreasonable, discriminatory, disparate, employment practice when it inflicted upon Plaintiff and only some, and not all, of its identically situated full-time remote home-based employees, an abusive and medically invasive requirement of having them submit to weekly Covid-19 PCR testing.

7. Allstate falsely told Plaintiff that it implemented its weekly testing requirement solely to comply with the December 2021 New York City Private Sector Employee Mandate "requirement" of weekly Covid-19 testing.

8. It is an indisputable fact that there was no New York City Mandate "requirement" of weekly Covid-19 testing. (Plaintiffs Exhibit "B").

9. Allstate's weekly Covid-19 PCR Nasal Swab testing directive was abusive because it unnecessarily subjected some, not all, of its employees to undergo an invasive medical procedure, with possible dangerous and harmful side effects or injury every week. The PCR Nasal Swab test involved a health care provider inserting a long, medicated swab stick, up and into Allstate employee's nostrils, that if not performed properly, could and has, caused complications and injury.

10. Allstate subjected some, not all, of its employees to this weekly Covid-19 PCR testing for an indefinite and undetermined duration of time, with no stated or known end date.

11. Allstate was required by law to treat the full-time remote home-based working Plaintiff and all its other full-time remote home-based workers alike because they were all similarly situated full-time remote home-based workers. The United States Supreme Court held that "All persons shall be treated alike, under like circumstances and conditions, both in the privileges conferred, and in the liabilities imposed". *Engquist v Oregon Dept. of Agr.*, 553 US 591 [2008]. The New York State Supreme Court has held, "Either there is a testing mandate for all, or there is a testing mandate for none". *Garvey v City of New York,* 77 Misc. 3d 585 [2022]. (Plaintiffs Exhibit "C").

12. Allstate took an retaliatory adverse employment action against Plaintiff when it illegally fired Plaintiff because plaintiff opposed Allstate's discriminatory disparate employment actions, of receiving the Covid-19 vaccination, requesting a medical or religious exemption, and submitting to weekly Covid-19 PCR Nasal Swab testing.

13. After Plaintiffs employment termination and after the 2021 New York City Covid-19 Mandate was rescinded, Allstate continued and still continues to black list and retaliate against Plaintiff by refusing to rehire Plaintiff, and to date, has denied all 42 of Plaintiffs applications for open, and advertised, Allstate attorney positions.

14. Allstate's failure to rehire and black listing of Plaintiff is an ongoing adverse employment action because the Plaintiff previously was fired for opposing Allstate's discriminatory disparate employment actions taken against him.

15. Plaintiff engaged in protected activity by complaining of and opposing to Allstate Human Resources and his immediate supervisor, Allstate Garden City law office Manager, Gary Korn Allstate's discriminatory disparate employment action taken against him, including Allstate's directive for Plaintiff to request a religious exemption to the vaccination mandate.

16. In this case, Allstate's termination of Plaintiffs employment indisputably constitutes an adverse employment action that was taken by Allstate against the Plaintiff.

17. The Plaintiff has alleged facts sufficient to support a causal connection between his complaints of Allstate's discriminatory disparate employment practices and actions taken against him and Allstate's retaliatory termination of Plaintiffs employment.

18.  The Plaintiff took action to oppose Allstate's unlawful conduct by complaining of and opposing Allstate's discriminatory disparate employment practice to Allstate HR and his immediate Manager, Gary Korn, and Allstate's subsequent termination of Plaintiff's employment was reasonably likely to deter such action by other Allstate employees.

19. The Plaintiff respectfully submits that he has established Allstate's employment retaliation and adverse employment action against him by showing that Allstate treated the Plaintiff differently than other Allstate employees who did not engage in the protected activity of complaining of and opposing Allstate's discriminatory disparate employment practices.

20. Plaintiff respectfully submits that "but for" Plaintiff's complaining of and opposing Allstate's discriminatory disparate employment practices and and actions, Allstate would not have terminated Plaintiffs employment for any other reason.

21.  Plaintiff respectfully submits that he has established a prima facie case of retaliation because plaintiff has demonstrated that he was engaged in protected activity when he complained of and opposed to Allstate Human Resources and

his immediate Allstate Manager, Gary Korn, about Allstate's discriminatory disparate employment actions taken against him.

22. Plaintiff respectfully submits that he has established a prima facie case of retaliation because Allstate knew that the Plaintiff engaged in protected activity when Plaintiff complained of and opposed to Allstate HR and his immediate Manager, Gary Korn, about Allstate's discriminatory disparate employment practices and actions taken against him.

23. Plaintiff respectfully submits that he has established a prima facie case of retaliation because Allstate took an adverse employment action against him by Allstate retaliating and terminating Plaintiffs employment solely as a result of Plaintiff complaining of and opposing Allstate's discriminatory disparate employment practices and actions.

24. Plaintiff respectfully submits that he establishes a prima facie case of retaliation because a causal connection that is close in time exists between the Plaintiffs protected activity and Allstate's adverse employment action.

25. In terminating Plaintiffs employment Allstate falsely and indisputably claimed that because Plaintiff did not submit to the December 13, 2021, New York City Health Commissioners Private Sector Employee Covid-19 Vaccination Mandate "requirement" of Covid-19 weekly testing, the Plaintiff was unavailable to conduct in-person work in New York City.

26. In terminating Plaintiffs employment Allstate falsely and indisputably claimed that because Plaintiff did not submit to the New York City "requirement" of

weekly Covid-19 testing, Allstate determined that Plaintiff voluntarily resigned from his job.  (Plaintiffs Exhibit "D").

27. In terminating Plaintiffs employment Allstate falsely and indisputably claimed that it was imperative for Plaintiff to submit to the New York City Mandate "requirement" of weekly Covid-19 testing to permit Plaintiffs entry into New York City courts and other public buildings in New York City.

28. Allstate terminated the Plaintiffs employment based solely upon Allstate's false and indisputably mistaken claim that because the Plaintiff did not submit to the New York City Mandate "requirement" of weekly Covid-19 testing, the Plaintiff was unavailable for in-person work in New York City.  (Plaintiffs Exhibit "D").

29. The New York State Supreme Court, in *Garvey v City of New York,* has taken "Judicial Notice" of the fact that the December 13, 2021, New York City Mandate did not provide an option of Covid-19 weekly testing.  The *Garvey* Court stated, "there was no reason why the City of New York could not continue with a vaccinate or test policy, like the Mayor's Executive Order that was issued in August 2021". *Garvey v City of New York,* 77 Misc. 3d 585 [2022].  (Plaintiffs Exhibit "C").

30. The New York State Supreme Court also held that the December 13, 2021, New York City Health Commissioners Private Sector Employee Covid-19 Vaccination Mandate was arbitrary and capricious and stated "the vaccination mandates for public employees and private employees is arbitrary and capricious" and ORDERED, "this Court finds the Commissioner of Health and Mental Hygiene's

order dated December 13, 2021, arbitrary and capricious pursuant to CPLR Sec.

7803", *Garvey v City of New York,* 77 Misc. 3d 585 [2022].  (Plaintiffs Exhibit "C").

31.  After the Plaintiffs employment termination, Allstate's Department of Law &
Regulation Counsel, Sree Rao Lopez, engaged in settlement negotiations with
the Plaintiffs former counsel.  Attorney Lopez informed the Plaintiffs former
counsel that it was Allstate Garden City law office Managing Attorney, Karen
Lawrence, who contacted Allstate Human Resources and had them terminate
Plaintiffs employment.  Attorney Lopez informed Plaintiffs former counsel that
Karen Lawrence did not want the plaintiff re-hired in the Garden City office.

32.  Allstate Attorney Lopez informed the plaintiffs former counsel that Allstate was
not ruling out Plaintiffs re-instatement to his Senior Trial Attorney position in the
Garden City office, but also wanted to inquire if the Plaintiff would be open to
being assigned to an Attorney position in Allstate's Department of Law &
Regulation corporate headquarters in Northbrook, Illinois.  Attorney Lopez
explained that the Plaintiff would not have to relocate to Northbrook, Illinois, but
could continue to work for Allstate from his Suffolk County, Long Island location.
Attorney Lopez also requested that the Plaintiff provide Allstate with the
monetary amount for damages, the Plaintiff would accept as settlement if
Allstate did re-instate or did not re-instate Plaintiffs employment.

33.  During the settlement negotiations, the Plaintiffs former counsel suddenly quit
his position with the Plaintiffs former law firm.  The Plaintiff did not want the
services of the replacement counsel and ended his attorney client relationship

with that law firm. The Plaintiff then sent an email to Allstate attorney Lopez, instructing her not to conduct any further settlement negotiations with Plaintiffs former law firm and that the Plaintiffs former law firm would be sending her a letter of withdrawal from representation. Allstate attorney Lopez sent an email to the Plaintiff and asked the Plaintiff to let her know when he retained new counsel. A few weeks later, the Plaintiff emailed Allstate attorney Lopez and informed her that he was going to proceed as a pro se litigant and that he wanted his Senior Trial Attorney job back in the Garden City office. Allstate attorney Lopez never responded to the Plaintiffs email.

34. Allstate Garden City law office Managing Attorney, Karen Lawrence, because of her numerous past discriminatory employment actions, has over the years, been named in numerous discrimination and wrongful termination lawsuits brought against her and Allstate by former Allstate attorney's. At the present time there is at least one Garden City law office former older attorney who has an employment discrimination action pending in the United States District Court for the Eastern District of New York, before the Honorable Judge Joanna Seybert, in which Karen Lawrence had been named as a defendant. (Evers v. Allstate 19-CV-4348 (JS) (ARL) 2024. There was also another case in which Karen Lawrence fired an older Allstate attorney, (Kevin Forde v. Karen Lawrence and Allstate Insurance Company).

35. Allstate has terminated the employment of Karen Lawrence.

36. The Plaintiff is the only full-time remote home-based workers fired by Allstate and Garden City law office Managing Attorney, Karen Lawrence, for allegedly not submitting to the non-existent New York City "requirement" of Covid-19 weekly testing.

37. Karen Lawrence and Allstate were aware that in March and June 24, 2022, just five weeks before Karen Lawrence and Allstate fired the Plaintiff, that it was widely reported in the media that New York City Mayor Adams, stated that he was not inspecting companies for vaccine mandate compliance and that Mayor Adams never enforced the New York City vaccination mandates and had no plans to enforce the New York City Private Sector Covid-19 Vaccination Mandate in the future. Yet, Karen Lawrence and Allstate just five weeks later, terminated the Plaintiffs employment. (Plaintiffs Exhibit "X").

38. The New York State Supreme Court in *Garvey v City of New York,* stated, "it's unclear to this Court whether any person was actually terminated, under the private sector vaccine mandate or whether any businesses were fined. However, it is clear that enforcement of the private sector mandate is lacking": "Adams administration is not inspecting companies for vaccine mandate compliance", New York 1, City not inspecting businesses vaccine mandate compliance (ny 1.com), *Garvey v City of New York,* 77 Misc.3d 585 [2022]. The New York State Supreme Court stated, "President Joseph Biden has said that the pandemic is over". "The State of New York ended the Covid-19 state of emergency over a month ago". *Garvey v City of New* inspecting businesses vaccine mandate

compliance (ny 1.com), *Garvey v City of New York,* 77 Misc.3d 585 [2022].

(Plaintiffs Exhibit "C").

## THE FACTS:

39. From March 13, 2020, up to and including August 3, 2022, Plaintiff was employed by Allstate as a "Full-Time Remote Home-Based" Senior Trial Attorney. Allstate directed the Plaintiff to perform 100% of the essential functions of his job including, all court conferences, motions, evidentiary hearings, arbitrations, mediations, depositions, and every other aspect of his job full-time remotely on-line via Zoom and telephone conferences conducted from Plaintiffs home in Suffolk County, New York.

40. From March 13, 2020, to August 3, 2022, Plaintiff was assigned to the full-time remote and closed Allstate law office of Karen L. Lawrence formerly located at 1225 Franklin Avenue, Garden City, New York 11530. The Law Office of Karen L. Lawrence was not a legal entity but was a practice area of the Allstate Legal Department's office located at 2775 Sanders Road, Northbrook, Illinois 60062.

41. From March 13, 2020, up to and including August 3, 2022, Allstate provided the Plaintiff with an Allstate Company Computer and Allstate Company Telephone so Plaintiff could perform all of the essential functions of his job full-time remotely from his home. Allstate paid for Plaintiffs telephone and home internet expenses every month.

42. Today, all of the approximately 200 Allstate Garden City law office employees are still working for Allstate as full-time remote home-based workers. Since March

13, 2020, every single one of petitioner's approximately 200 former full-time remote home-based working colleagues are still working for Allstate as full-time remote home-based workers. Since March 13, 2020, Allstate has supplied all of petitioner's former full-time remote home-based colleagues with Allstate Company computers and telephones so they can continue to work from their homes as full-time remote home-based employees. For more than four years, Allstate has been paying for all of Petitioner's former full-time remote home-based colleague's telephone and home internet expenses every month. Many of the approximately 200 Allstate full-time remote home-based former colleagues of the Petitioner are not vaccinated and have never been required by Allstate to receive the Covid-19 vaccination, request a medical or religious exemption to the Covid-19 vaccination, or to submit to weekly Covid-19 PCR Nasal Swab testing. The petitioner was the only one of the approximately 200 Allstate full-time remote home-based workers fired by Garden City law office Managing Attorney, Karen Lawrence, for allegedly not submitting to New York City's non-existent requirement of Covid-19 weekly PCR Nasal Swab testing.

43. From March 13, 2020, up to and including August 3, 2022, Plaintiff was never directed by Allstate to perform any in-person job assignment in New York City, or anywhere else. Allstate at no time between March 13, 2020, up to and including, August 3, 2022, removed or changed Plaintiffs designated employment position of "full-time remote home-based Senior Trial Attorney.

44. Allstate cannot demonstrate a single instance where Plaintiff did not, or could not, perform any essential function of his job.

45. In November 2021, Allstate offered employment buy-outs to about 20 of its Garden City law office full-time remote home-based attorneys between the ages of 55 to 75 years of age. Allstate did not offer employment buy-out to any attorney under 55 years of age. About 15 attorneys between the ages of 60 to 75 years of age took the buy-out. After the Allstate employment buy-outs, the Plaintiff, at 69-years of age, became the oldest attorney assigned to Allstate's full-time remote and closed Garden City, New York law office.

46. Plaintiff was one of Allstate's more qualified attorneys. Plaintiff was the only attorney in Allstate's office to have earned a Master of Law Degree. Plaintiff was the only Allstate Attorney in the office admitted to the United States District Court. Plaintiff is admitted to the Bars of the United States District Courts for the Northern, Eastern, Southern, and Western, Districts of New York, as well as The Supreme Court of the United States of America, The United States Court of Appeals, Washington, D.C., The United States Court of Appeals for the Armed Forces, Washington, D.C., and The United States Court of Federal Claims, Washington, D.C.

47. Throughout his employment career with Allstate, Plaintiff was a dedicated and loyal employee, who never missed a day of work, was never late for work, never failed to cover a job assignment, was never in violation of any Allstate regulation or policy, was never disciplined for any reason and never had any complaint

lodged against him.  Plaintiff was an exemplary worker.  Plaintiff was given excellent performance ratings, Plaintiff received the highest client satisfaction rating of all Allstate attorneys, Plaintiff received salary increases and performance bonuses every year.

48. On December 13, 2021, the New York City Health Commissioner implemented a Private Sector Employee Covid-19 Vaccination Mandate.  The Mandate was a "Vaccination" Mandate only.  The Mandate did not provide an option for weekly Covid-19 testing.  The Mandate did not apply to "Remote workers", and the Mandate did not apply to persons that were granted a Religious Exemption to the Mandate.  (Plaintiffs Exhibit "B").

49. The New York State Supreme Court has taken judicial notice of the fact that the December 2021, New York City Private Sector Employee Covid-19 Mandate did not provide for a Covid-19 weekly testing option.  Garvey v City of New York, 77 Misc.3d 585 [2022].  (Plaintiffs Exhibit "C").

50. On December 13, 2021, Allstate did not have a Company Covid-19 Vaccination or Testing Policy.  Therefore, on December 22, 2021, Allstate Human Resources, in response to the December 2021, New York City Private Sector Employee Covid-19 Vaccination Mandate, issued an email letter to Allstate Garden City law office Managing Attorney, Karen Lawrence, explaining Allstate's official position concerning the New York City Mandate. (Plaintiff's Exhibit "E").

51. The Allstate HR December 22, 2022, email Mandate letter stated that the New York City Private Sector Employee Vaccination Mandate did not apply to

"Remote Workers", and stated that Allstate will comply with the December 2021, New York City Private Sector Employee Vaccination Mandate while maintaining employee choice as part of its Company Value Proposition.

52. The Allstate HR December 22, 2021, email stated that employees who wish to remain unvaccinated will need to work remotely or be encouraged to fill internal roles that do not require in-person work.

53. The Allstate HR December 22, 2021, email stated that it was only relevant to employees who performed in-person business in the five boroughs of New York City".

54. In the Allstate HR December 22, 2021, New York City Mandate letter, there was no mention of Allstate employee weekly Covid-19 testing or the need for Allstate employees to request a medical or religious exemption to the Mandate. (Plaintiffs Exhibit "E").

55. In response to the Allstate HR December 22, 2021, email, Plaintiffs Immediate Supervisor, Allstate Garden City law office Manager, Gary Korn informed the Plaintiff that the New York City Vaccination Mandate did not apply to Plaintiff because Plaintiff was a full-time remote home-based worker.

56. On February 18, 2022, Allstate HR sent an email to Plaintiff informing the full-time remote home-based working Plaintiff that he was required to receive the Covid-19 vaccination or in the alternative, apply for a religious or medical exemption. (Plaintiffs Exhibit "F").

57. Plaintiff immediately complained of, and opposed Allstate's discriminatory action to Allstate HR and his immediate supervisor, Gary Korn, informing Allstate HR and Gary Korn that Allstate was engaging in discriminatory disparate employment practices.

58. Plaintiff complained of and opposed Allstate's disparate treatment, and that it had a disparate impact, upon Plaintiff in requiring Plaintiff and only some, and not all, of the identically situated Allstate full-time remote home-based workers to get vaccinated, or to apply for a religious or medical exemption.

59. Allstate Garden City law office Manager, Gary Korn, told Plaintiff that he agreed with Plaintiff's assertion that he was being treated differently and less favorably than other exactly and similarly situated full-time remote home-based Allstate Garden City law office employees, and that he complained to Karen Lawrence and told her that Allstate was discriminating against the Plaintiff because Plaintiff was a full-time remote home-based worker and that the New York City Vaccination Mandate did not apply to the Plaintiff. Gary Korn also complained to Karen Lawrence that there were other Allstate full-time remote home-based workers that were not required to get vaccinated or apply for a religious exemption.

60. Even though the Mandate did not apply to Plaintiff, the Plaintiff, in good faith, and as an always faithful and obedient Allstate employee, applied for a religious exemption to the New York City Vaccination Mandate on March 10, 2022. (Plaintiff Exhibit "G").

61. Allstate Garden City law office Manager, Gary Korn, told the Plaintiff that after he spoke with Karen Lawrence and told her that Allstate was discriminating against Plaintiff, it is believed that Karen Lawrence, in retaliation for Plaintiff requesting a religious exemption, called Allstate HR and told them that she wanted the Plaintiff to submit to the New York City's Private Sector Employee Mandate requirement of Weekly Covid-19 PCR testing. Shortly thereafter, on March 24, 2022, Plaintiff received an email from Allstate HR informing Plaintiff that he was required by the December 2021, Mandate to submit to weekly Covid-19 PCR testing. (Plaintiffs Exhibit "H").

62. In response to the Allstate HR March 24, 2022, weekly Covid-19 testing email, Plaintiff immediately contacted Allstate HR and Gary Korn and again complained of Allstate's disparate treatment and opposed Allstate's disparate treatment and the disparate impact Allstate's discriminatory employment action was having upon him.

63. Allstate HR in response to Plaintiff's opposing Allstate's discriminatory work practices, responded on March 25, 2022, in an Allstate HR, email at 2:18 PM, denied the Plaintiffs request for a religious exemption based on the fact that, because the Plaintiff was a full-time remote home-based worker, he was not required to submit to the New York City requirement of weekly Covid-19 testing and as a result, there was no need for Plaintiff to be granted a religious exemption to the Mandate. (Plaintiffs Exhibit "I").

64. On March 25, 2022, at 7:10 PM, Allstate HR sent another email to the Plaintiff in which Allstate informed the Plaintiff that Allstate was granting Plaintiffs Religious Exemption Request, and that Plaintiff was only required to submit to weekly Covid-19 testing in the "event" Plaintiff worked in-person in New York City". (Plaintiffs Exhibit "J").

65. Allstate Manager, Gary Korn told Plaintiff that is believed that Karen Lawrence, after March 25, 2022, again contacted Allstate HR and requested that Allstate HR have the Plaintiff submit to the New York City requirement of Covid-19 weekly testing.

66. On April 13, 2022, Allstate HR sent another erroneous and mistaken email to Plaintiff informing Plaintiff that Plaintiff was required by the New York City Mandate to submit to weekly Covid-19 testing. (Plaintiffs Exhibit "K").

67. On April 14, 2022, Plaintiff sent an email letter to Allstate HR again complaining of Allstate's discriminatory employment practices and opposing Allstate's discriminatory disparate treatment and disparate impact upon him by informing Allstate HR that Plaintiff was a full-time remote home-based worker and was not subject to weekly Covid-19 testing. (Plaintiffs Exhibit "L").

68. On April 14, 2022, Allstate HR sent another email to Plaintiff, which informed Plaintiff that he was not required to submit to weekly Covid-19 testing because he was a full-time remote home-based worker. (Plaintiffs Exhibit "M").

69. The Plaintiff forwarded the April 14, 2022, Allstate HR to Allstate Garden City law office Manager, Gary Korn. (Plaintiffs Exhibit "N").

70. On April 19, 2022, Allstate Garden City law office Manager, Gary Korn forwarded the Allstate HR April 14, 2022, stating that Plaintiff was not required to submit to weekly Covid-19 testing, to Garden City law office Managing Attorney, Karen Lawrence. (Plaintiffs Exhibit "O").

71. Allstate Manager, Gary Korn, informed Plaintiff that after he sent the Allstate HR April 14, 2022, email to Karen Lawrence, on April 19, 2022, Karen Lawrence immediately contacted Allstate HR and told them that she realized Plaintiff was a full-time remote home-based worker and that Plaintiff was granted a religious exemption, but nevertheless, she wanted the Plaintiff to submit to weekly Covid-19 testing. (Petitioners Exhibit "P").

72. On April 19,2022, Allstate HR responded to Karen Lawrence email and sent her a copy of a previously mistaken and erroneous email stating that Plaintiff was required to submit to weekly Covid-19 testing. (Plaintiffs Exhibit "Q").

73. Plaintiff discussed the April 19, 2022, Allstate HR email with his immediate supervisor, Allstate Garden City law office Manager, Gary Korn, and Mr. Korn informed Plaintiff that he was a full-time remote home-based worker and the weekly Covid-19 testing was not applicable to Plaintiff.

74. On April 20, 2022, Plaintiff sent an email letter to Allstate HR Director, Charmaine Neal, Garden City law office Managing Attorney, Karen Lawrence, and Garden City law office Manager, Gary Korn, complaining of and opposing Allstate's discriminatory disparate treatment towards him as unlawful. (Plaintiff Exhibit "R").

75. Following Plaintiffs April 20, 2022, email letter, Allstate Garden City law office Manager, Gary Korn responded to Plaintiff and confirmed that Plaintiff was a full-time remote home-based worker and was not required to submit to weekly Covid-19 testing. Gary Korn also informed Plaintiff that Karen Lawrence was furious and angry with Plaintiff for writing his April 14, 2022, and April 20, 2022, email letters to Allstate HR, and for being granted a religious exemption to the vaccine Mandate, and not submitting to weekly Covid-19 testing.

76. Allstate HR Director, Charmaine Neal, never responded to Plaintiffs April 20, 2022, email letter concerning Plaintiffs complaining of and opposing Allstate's discriminatory treatment towards him.

77. Allstate Garden City law office Managing Attorney, Karen Lawrence, never responded to Plaintiffs April 20, 2022, email letter concerning Plaintiffs complaining of and opposing Allstate's discriminatory treatment of him.

78. After Plaintiffs April 20, 2022, email letter to Allstate HR Director, Charmaine Neal, Plaintiff was never contacted again by Allstate HR concerning weekly Covid-19 testing, or for any other reason.

79. After Plaintiffs April 20, 2022, email letter to Allstate HR Director, Charmaine Neal, and Allstate Garden City law office Managing Attorney, Karen Lawrence, Allstate continued to direct Plaintiff to perform 100% of the essential functions of his job, full-time remotely from his home.

80. On August 3, 2022, Allstate directed the Plaintiff to perform three different remote court conferences on-line from his home. However, before Plaintiff

could perform the three court conferences, Karen Lawrence, without warning of

any kind, informed Plaintiff that he was fired effective immediately. Karen

Lawrence refused to inform the Plaintiff of the reason for his employment

termination.

81. The Next day, August 4, 2022, Plaintiff received an explanation for him

employment termination from Allstate HR. (Plaintiffs Exhibit "D").

82. About 15 minutes after Karen Lawrence terminated the Plaintiffs employment,

Plaintiff received a call from a very upset Allstate Garden City law office

Manager, Gary Korn. Mr. Korn was crying very heavily and told the Plaintiff that

he could not believe what Karen Lawrence had did to Plaintiff and that Plaintiff

could not believe what Karen Lawrence had been putting him through the last

few days. Mr. Korn explained that Karen Lawrence had been calling and emailing

him a hundred times up until almost midnight the night before, telling him that

she wanted Plaintiff fired for not submitting to weekly Covid-19 testing.

83. Mr. Korn, informed Plaintiff that all, of the other Allstate Garden City law office

managers were very upset over Karen Lawrence discrimination and retaliation

inflicted upon Plaintiff and that if called to testify, they would testify as to the

discrimination and retaliation Kare Lawrence inflicted upon the Plaintiff.

84. Mr. Korn informed Plaintiff that one of the Allstate Garden City law office

Managers was so upset over Karen Lawrence discrimination and retaliation

against Plaintiff, that the Manager was going to get an attorney for Plaintiff to

commence a discrimination action against Karen Lawrence and Allstate.

85. Three weeks after Plaintiffs employment termination, New York City announced that they were rescinding the New York City Private Sector Employee Vaccination Mandate effective November 1, 2022.

86. On November 3, 2022, Allstate Garden City law office Manager, Gary Korn called Plaintiff from the Allstate Company telephone, and asked Plaintiff to apply for his old job back. Mr. Korn informed Plaintiff that Allstate fired the Attorney that it hired to replace Plaintiffs position and that Plaintiffs former position was open and advertised on Allstate's Company website. Gary Korn informed Plaintiff that Karen Lawrence had no excuse not to rehire Plaintiff because there was no longer a New York City Covid-19 Vaccination Mandate, and that Plaintiff was the most qualified applicant for the job.

87. Plaintiff informed Mr. Korn that earlier that same day, he applied for his old job back along with two other open and advertised Garden City law office attorney positions.

88. Gary Korn informed Plaintiff that he called Allstate HR and told them that Plaintiff applied for the open and advertised jobs in the Allstate Garden City law office and that he wanted Plaintiff rehired and put back on his team.

89. Gary Korn informed Plaintiff that he spoke with Karen Lawrence and told her that the Plaintiff applied for his old job back and two other positions and that he wanted Plaintiff rehired and put back on his team.

90.  Karen Lawrence informed Gary Korn that if Plaintiff wanted his old job back, or any other job in the Allstate Garden City office, the Plaintiff would have to submit to arbitration.

91.  Gary Korn informed Karen Lawrence that Plaintiff was not required to submit to arbitration for any of the three open and advertised job positions.

92.  Karen Lawrence and Allstate denied all of Plaintiffs job applications.

93.  Karen Lawrence and Allstate have denied more than 40 Allstate open and advertised attorney positions, some were entry level positions.

94.  While Karen Lawrence was denying Plaintiffs applications for attorney positions, Karen Lawrence was in desperate need to fill Allstate Garden City attorney open and available positions.  Karen Lawrence sent a Company email to all Garden City employees offering a $1,000 bonus reward to any employee who could recommend an attorney for employment in the Allstate Garden City law office.

95.  After Karen Lawrence and Allstate denied all of Plaintiffs job applications, Karen Lawrence and Allstate continued to advertise those open and available positions and eventually filled all those job positions with much younger and less qualified attorneys.

96.  Allstate has a Company Non-Retaliation Policy.  (Plaintiffs Exhibit "S").

97.  Allstate has a Zero Tolerance For Retaliation Policy.  (Plaintiffs Exhibit "T").

98.  Allstate has a Civil Rights Violations Policy.  (Plaintiffs Exhibit "U").

99.  Allstate has an Ethical Decision-Making Policy and a Speak-up, Seeking Help and Resolving Concerns Policy.  (Plaintiffs Exhibit "V").

100.    Allstate has a Policy for Reporting Ethical, Legal, regulatory and Compliance Concerns.  (Plaintiffs Exhibit "W").

## AS A FIRST CAUSE OF ACTION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 FOR ALLSTATE'S RETALIATION AND TERMINATION OF PLAINTIFF EMPLOYMENT:

101.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

102.    Unlawful retaliation under 42 U.S.C. Section 1981.  Goldberg v. Bespoke Real Estate LLC, et al, 23-CV-5614 (JPO), 2024 WL 1256006 (S.D.N.Y. March 25, 2024), to establish a prima facie case of retaliation under section 1981, a plaintiff must show that (1) he was engaged in a protected activity, (2) the employer was aware of his participation in the protected activity, (3) the employer took an adverse action against him (4) a causal connection existed between the protected activity and the adverse action. (Cook v. CBS, Inc., 47 F. App'x 594, 596 (2d Cir. 2002).  An individual who has opposed discrimination prohibited by the statute has engaged in protected activity, (Johnson v. J Walter Thompson U.S.A., LLC, 224 F. Supp. 3d 296, 313 (S.D.N.Y. 2016).  (Littlejohn, 795 F.3d at 317), Amaya v. Ballyscher LLC, 295 F. Supp. 3d 204, 227 (E.D.N.Y. 2018), (Rojas v. Roman Cath. Diocese of Rochester, 660 F. 3d 98, 108 (2d Cir. 2011).

103.    Retaliation claims brought under Title VII are analyzed under the McDonnell Douglas-burden shifting analysis. (Carr v. NYC Transit Auth., 76 F. 4th 172, 177 (2nd Cir. 2023).  To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he was engaged in protected activity (2) the alleged

retaliator knew that he was involved in protected activity (3) an adverse decision or course of action was taken against him (4) a causal connection exists between the protected activity and the adverse action. (Gamble v. Fieldstone Lodge Nursing & Rehab. Ctr., F. Supp. 3d 2023 WL 6393739 at *6 (S.D.N.Y. Sept. 30, 2023).

104.    An employer may not legally fire, or retaliate against an individual, including deciding not to rehire the individual, because that individual opposed the employer's discrimination in some known way.

105.    Failure to Rehire is an adverse employment action.

106.    The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including complaints to management. (La Grande v. DeCrescente Dist. Co., 370 Fed. App'x 206, 212 (2d Cir. 2010).

107.    Plaintiff engaged in a protected activity by complaining about discrimination. (Scott v. YSB Services Inc., 21-CV-7711 (VSB), 2024 WL 1330043 (S.D.N.Y. March 28, 2024).

108.    Termination of employment is a prototypical adverse employment action. (Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006). Employment termination indisputably constitutes an adverse employment action, (Guzman v. News Corp., No. 09-CV-09323, WL 5807058, at 21 n. 7 (S.D.N.Y. Oct. 28, 2013).

109.    Plaintiff plausibly alleges facts to support a causal connection between his complaints and the termination of his employment, (Lindner v. Int'l Bus. Machs. Corp., No. 06-CV-4751 (RJS), 2008 WL 2461934, at *7 (S.D.N.Y. June 18, 2008).

110.    Plaintiff took action to oppose unlawful conduct and the subsequent termination of Plaintiff's employment is reasonably likely to deter such action, (Gonzalez v. City of New York, 377 F. Supp. 3d 273, 299 (S.D.N.Y. 2019).

111.    Courts have consistently held that one way to establish a claim of retaliation is to show that the complaining employee is treated different than other employees who did not engage in a protected activity. (Knight v City of N.Y., 303 F. Supp. 2d 485, 498-99 (S.D.N.Y. 2004), DeCintio v Westchester Cnty. Med.CTR., 821 F.2d 111, 115 (2d Cir. 1987), Conklin v County Of Suffolk, 859 F. Supp.2d 415, 433-434 (E.D.N.Y. 2012), Langford v Int'l Union of Operating Eng'rs, Local 30, 765 F. Supp 2d 486, 504 (S.D.N.Y. 2011), Gaffney v Dep't of Info. Tech. and Telecomms., 536 F. Supp.2d 445, 463 (S.D.N.Y. 2008).

112.    Title VII prohibits employers from retaliating against any employee because that individual has opposed any employment practice made unlawful by Title VII.

113.    As described above, Allstate, by terminating Plaintiffs employment, has taken an adverse employment action against Plaintiff which was motivated by Allstate's retaliation for Plaintiff complaining of, and opposition to, Allstate's discriminatory employment practices in violation of Title VII.

**AS FOR A SECOND CAUSE OF ACTION PLAINTIFF ALLEGES THAT ALLSTATE FAILED TO REHIRE HIM BASED UPON AGE DISCRIMINATION UNDER THE AGE DISCRIMINATION IN**

**EMPLOYMENT ACT (ADEA) AND IN RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964:**

114.  Plaintiff is a member of a protected class and is 71 years of age.

115.  Plaintiff was qualified to hold the employment positions applied for.

116.  Allstate rejected Plaintiffs applications because of Plaintiffs Age and in Retaliation for Plaintiffs former opposition to Allstate's discriminatory disparate employment practices.

117.  Allstate continued to advertise those same employment positions after denying Plaintiffs applications.

118.  Allstate and Karen Lawrence sent an Allstate Company email to all Allstate Garden City law office employees offering a $1,000 bonus to any employee who could recommend an attorney for employment in the Allstate Garden City law office.

119.  Allstate and Karen Lawrence eventually filled every position that Plaintiff applied for with much younger and less qualified attorneys.

**AS FOR A THIRD CAUSE OF ACTION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ALLSTATE FAILED TO ACCOMMODATE PLAINTIFF'S REQUEST FOR A REASONABLE ACCOMMODATION OF HIS RELIGIOUS EXEMPTION:**

120.  In Plaintiffs April 20, 2022, email letter to Allstate HR Director, Charmaine, Neal, Allstate Garden City law office Managing Attorney, Karen Lawrence, and Allstate Garden City law office Manager, Gary Korn, the Plaintiff did not know at

the time, that there was no New York City requirement of weekly Covid-19 testing, because Karen Lawrence and Allstate concealed that fact from Plaintiff and all Allstate Garden City law office employees. Because of Plaintiffs Religious Exemption to the New York City Mandate, the Plaintiff requested from Allstate and Karen Lawrence a simple and reasonable accommodation for Allstate to merely keep the status quo of his full-time remote home-based Senior Trial Attorney position.

121.    Allstate HR and Karen Lawrence never responded to Plaintiffs reasonable accommodation request and never responded in any way to Plaintiffs April 20, 2022, email letter.

122.    Allstate Garden City law office Manager, Gary Korn responded and informed the Plaintiff that he was still a full-time remote home-based Senior Trial Attorney and that there was no weekly Covid-19 testing required.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant for all compensatory, lost pay, front pay, reinstatement, emotional, and any other damages permitted by law. The Plaintiff respectfully demands a trial by jury.

Certification and Closing:

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for

extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary

support or, if specifically so identified, will likely have evidentiary support after a

reasonable opportunity for further investigation or discovery; and (4) the complaint

otherwise complies with the requirements of Rule 11.

Dated: Bay Shore, New York

May 7, 2024

Respectfully submitted,

Malachy P. Lyons, Jr.

Plaintiff, Pro Se,

1440 Ackerson Boulevard,

Bay Shore, New York 11706

(631) 219-1505