**PLAINTIFFS EXHIBIT   A**

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 02/21/2024

**To:** Malachy Lyons
1440 Acherson Boulevard
Bay Shore, NY 11706

Charge No: 16G-2023-05381

EEOC Representative and email:    HERNAN MORALES
State & Local Program Manager
HERNAN.MORALES@EEOC.GOV

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Yaw Gyebi, Jr.
02/21/2024

Yaw Gyebi, Jr.
District Director

**PLAINTIFFS EXHIBIT   B**

# ORDER OF THE COMMISSIONER
## OF HEALTH AND MENTAL HYGIENE
### TO REQUIRE COVID-19 VACCINATION IN THE WORKPLACE

**WHEREAS**, on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents, and such Order remains in effect; and

**WHEREAS**, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS,** the COVID-19 virus continues to spread and mutate, and on November 26, 2021, the World Health Organization ("WHO") declared a new variant of COVID-19, named Omicron, a variant of concern and preliminary evidence suggests an increased risk of reinfection and spread across the world, including to the United States; and

**WHEREAS,** on November 26, 2021, New York State Governor Kathy Hochul issued Executive Order No. 11 to address new emerging threats across the State posed by COVID-19, finding that New York is experiencing COVID-19 transmission at rates the State has not seen since April 2020 and that the rate of new COVID-19 hospital admissions has been increasing over the past month to over 300 new admissions a day; and

**WHEREAS**, COVID-19 spreads when an infected person exhales the virus and these are breathed in by other people or land on their eyes, noses, or mouth, with people closer than 6 feet from the infected person most likely to get infected, making the risk of COVID-19 transmission greater in workplace settings because of close proximity to others and the sharing of office space and facilities such as restrooms, elevators, lobbies, meeting and break rooms, and other common areas; and

**WHEREAS,** the WHO and the U.S. Centers for Disease Control and Prevention ("CDC") have advised all individuals to take measures to reduce their risk of COVID-19, especially the Delta and Omicron variants, including vaccination, which is an effective tool to prevent the spread of COVID-19 and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated; and

**WHEREAS,** a study by Yale University demonstrated that the City's vaccination campaign was estimated to have prevented about 250,000 COVID-19 cases, 44,000 hospitalizations and 8,300 deaths from COVID-19 infection since the start of vaccination through July 1, 2021, and the City believes the number of prevented cases, hospitalizations and death has risen since then; and that between January 1, 2021, and June 15, 2021, over 98% of hospitalizations and deaths from COVID-19 infection involved those who were not fully vaccinated;

1

**WHEREAS**, a system of vaccination that requires employers to implement vaccination policies for their employees will potentially save lives, protect public health, and promote public safety; and

**WHEREAS,** on September 9, 2021, President Biden issued an Executive Order stating that "It is essential that Federal employees take all available steps to protect themselves and avoid spreading COVID-19 to their co-workers and members of the public," and ordering each federal agency to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees, with exceptions only as required by law"; and

**WHEREAS**, on August 16, 2021, Mayor Bill de Blasio signed Emergency Executive Order No. 225, the "Key to NYC," which requires the employees, as well as patrons, of establishments providing indoor entertainment, dining, and fitness to show proof of at least one dose of an approved COVID-19 vaccine, and such Order, as reissued in Emergency Executive Order No. 316 on December 13, 2021, is still in effect; and

**WHEREAS,** on August 24, 2021, I issued an Order requiring that Department of Education employees, contractors, and visitors provide proof of COVID-19 vaccination before entering a DOE building or school setting, and such Order was re-issued on September 12 and 15, 2021, and subsequently amended on September 28, 2021, and such Orders and amendment were ratified by the Board of Health on September 17, 2021 and October 18, 2021; and

**WHEREAS,** on September 12, 2021, I issued an Order requiring that staff of early childhood programs or services provided under contract with the Department of Education or the Department of Youth and Community Development provide proof of COVID-19 vaccination, and that Order was ratified by the Board of Health on September 17, 2021; and

**WHEREAS,** on October 20, 2021, I issued an Order requiring that City employees provide proof of vaccination to their agencies or offices by October 29, 2021 or be excluded from their workplace, and on October 31, 2021, I issued a supplemental Order, and both Orders were ratified by the Board of Health on November 1, 2021; and

**WHEREAS,** on November 17, 2021, I issued an Order requiring COVID-19 vaccinations for staff of child care programs, as defined therein, and in early intervention programs, and such Order was ratified by the Board of Health on November 19, 2021; and

**WHEREAS,** on December 2, 2021, I issued an Order requiring COVID-19 vaccinations for all nonpublic school staff and volunteers; and

**WHEREAS,** pursuant to Section 558 of the New York City Charter (the "Charter"), the Board of Health may embrace in the Health Code all matters and subjects to which the power and authority of the Department of Health and Mental Hygiene ("the Department") extends; and

**WHEREAS,** pursuant to Section 556 of the Charter and Section 3.01(c) of the Health Code, the Department is authorized to supervise the control of communicable diseases and

2

conditions hazardous to life and health and take such actions as may be necessary to assure the maintenance and protection of public health; and

**WHEREAS,** Section 17-104 of the New York City Administrative Code ("Administrative Code") directs the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17-109(b) of Administrative Code, the Department may adopt vaccination measures to effectively prevent the spread of communicable diseases; and

**WHEREAS,** pursuant to Section 3.01(d) of the Health Code, I am authorized to issue orders and take actions that I deem necessary for the health and safety of the City and its residents when urgent public health action is needed to protect the public health against an existing threat and a public health emergency has been declared pursuant to such section; and

**NOW THEREFORE,** I, Dave A. Chokshi, MD, MSc, Commissioner of the Department of Health and Mental Hygiene, finding that a public health emergency within New York City continues, and that it is necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency, and hereby order that:

1. Beginning December 27, 2021, workers must provide proof of vaccination against COVID-19 to a covered entity before entering the workplace, and a covered entity must exclude from the workplace any worker who has not provided such proof, except as provided in paragraph 5.

2. Covered entities shall verify workers' proof of vaccination. Covered entities shall:

   a. maintain a copy of each worker's proof of vaccination and, if applicable, a record of reasonable accommodation(s) as described in (b)(iv); *OR*

   b. maintain a record of such proof of vaccination, provided that such record shall include:

      i. the worker's name; and

      ii. whether the person is fully vaccinated; and

      iii. for a worker who submits proof of the first dose of a two-dose vaccine, the date by which proof of the second dose must be provided, which must be no later than 45 days after the proof of first dose was submitted; and

      iv. for a worker who does not submit proof of COVID-19 vaccination because of a reasonable accommodation, the record must indicate that such accommodation was provided, and the covered entity must separately maintain records stating the basis for such accommodation and any supporting documentation provided by such worker; *OR*

   c. check the proof of vaccination before allowing a worker to enter the workplace and maintain a record of the verification.

3

For a non-employee worker, such as a contractor, a covered entity may request that the worker's employer confirm the proof of vaccination in lieu of maintaining the above records. A covered entity shall maintain a record of such request and confirmation.

Records created or maintained pursuant to this section shall be treated as confidential.

A covered entity shall, upon request by a City agency, make available for inspection records required to be maintained by this section, consistent with applicable law.

3. No later than December 27, 2021, a covered entity shall affirm on a form provided by the Department compliance with the requirements of paragraph 2 of this Order and post the affirmation in a conspicuous location.

4. For purposes of this Order:

    a. "Covered entity" means:

        i. a non-governmental entity that employs more than one worker in New York City or maintains a workplace in New York City; or

        ii. a self-employed individual or a sole practitioner who works at a workplace or interacts with workers or the public in the course of their business.

    b. "Fully vaccinated" means at least two weeks have passed after an individual received a single dose of a COVID-19 vaccine that requires only one dose, or the second dose of a two-dose series of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization, or any other circumstance defined by the Department in its guidance associated with this Order.

    c. "Proof of vaccination" means one of the following documents demonstrating that an individual has (1) been fully vaccinated against COVID-19; (2) received one dose of a single-dose COVID-19 vaccine; or (3) received the first dose of a two-dose COVID-19 vaccine, provided that a worker providing proof of only such first dose provides proof of receiving the second dose of that vaccine within 45 days after receiving the first dose:

        i. A CDC COVID-19 Vaccination Record Card or other official immunization record from the jurisdiction, city, state, or country where the vaccine was administered, or from a healthcare provider or other approved immunizer who administered the vaccine, that provides the person's name, vaccine brand, and date of administration. A digital photo or photocopy of such record is also acceptable.

        ii. New York City COVID Safe App showing a vaccination record;

        iii. A valid New York State Excelsior Pass/Excelsior Pass Plus;

        iv. CLEAR Health Pass; or

4

      v. Any other method specified by the Commissioner as sufficient to demonstrate proof of vaccination.

    d. "Worker" means an individual who works in-person in New York City at a workplace. Worker includes a full- or part-time staff member, employer, employee, intern, volunteer or contractor of a covered entity, as well as a self-employed individual or a sole practitioner.

    Worker does not include:

      i. an individual who works from their own home and whose employment does not involve interacting in-person with co-workers or members of the public;

      ii. an individual who enters the workplace for a quick and limited purpose; or

      iii. non-City residents who are performing artists, college or professional athletes, or individuals accompanying such performing artists or college or professional athletes who do not have to display proof of vaccination pursuant to the Key to NYC program, Emergency Executive Order No. 316 and successor Orders.

    e. "Workplace" means any location, including a vehicle, where work is performed in the presence of another worker or member of the public.

5. Nothing in this Order shall be construed to prohibit reasonable accommodations for medical or religious reasons.

6. This Order shall not apply to covered entities or individuals who are already subject to another Order of the Commissioner of the Department, Board of Health, the Mayor, or a State or federal entity that is in effect and requires them to maintain or provide proof of full vaccination or to individuals who have been granted a reasonable accommodation pursuant to such requirement.

7. This Order shall take effect immediately, and remain in effect until rescinded, subject to the authority of the Board of Health to continue, rescind, alter, or modify this Order pursuant to Section 3.01(d) of the Health Code.

Dated: <u>December 13, 2021</u>

                                    Dave A. Chokshi, MD, MSc
                                    Commissioner

5

**PLAINTIFFS EXHIBIT   C**

NYSCEF DOC. NO. 37

RECEIVED NYSCEF: 10/24/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND

---

GEORGE GARVEY, ADAM BIANCO,
ANTHONY FIGUEROA, CURTIS CUTLER,
DALE NICHOLLS, DANNY HULKOWER,
FRANK CALAMANCO, JAMES GERMANO,
KOLA SMITH, MANDEL BAILEY,
MITCHUM GREENE, PATRICIA BUCCELLATO,
RALPH MARTINEZ, RUSSELL PIAZZA,
SEAN ABELL, TOMMY LIBRETTI,

Index #: 85163/2022

                              Petitioners,

For A Judgment Pursuant To
Article 78 of the CPLR

**DECISION & ORDER**

            -against-

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF HEALTH AND MENTAL
HYGIENE, NEW YORK CITY DEPARTMENT
OF SANITATION, DAVID CHOKSHI, in his official
capacity as the Commissioner of the Department of Health
and Mental Hygiene, and ERIC ADAMS, in his official
capacity as Mayor

                              Respondents.

---

Upon all of the papers filed in support of the applications and the papers filed in opposition
thereto, and after hearing oral arguments, it is

**ORDERED** that Motion #002 brought by Respondents for a judgment pursuant to CPLR
3211(a)(7) to dismiss the Petition on the grounds that the Petitioner failed to state a claim is hereby
denied.

**ORDERED** that the Petition is hereby granted as set forth below.

NYSCEF DOC. NO. 37
RECEIVED NYSCEF: 10/24/2022

## BACKGROUND & PROCEDURAL HISTORY

On October 20, 2021, the Health Commissioner of the City of New York, David Chokshi, (hereinafter "Commissioner Chokshi" and/or "DOHMH") issued an Order of the Commissioner of the Department of Health and Mental Hygiene (hereinafter "public employee vaccination mandate"). The vaccination mandate required all City employees to show proof of at least one dose of vaccination against Covid-19 by 5:00PM on October 29, 2021. Petitioners are former-Department of Sanitation (hereinafter "DSNY") employees that were terminated in February 2022 for failure to comply with vaccination requirements. On December 13, 2021, the Commissioner extended the vaccination mandate to employees in the private sector (hereinafter "private employee vaccination mandate"). On March 24, 2022, Mayor Adams enacted Executive Order No. 62, which provided blanket exemptions from the private employers' vaccine mandate for athletes, performers, and other artists (hereinafter "private exemption order" or "Mayor's exemption").

Petitioners' central argument is that Mayor Adams' Executive Order No. 62, the private exemption order, rendered the public employee vaccination mandate arbitrary and capricious or unconstitutional. Furthermore, the Petitioners all claim, and provided laboratory documentation, that they have natural immunity to Covid-19 from prior infection(s). Respondents' central argument is that the private employers' exemption order and the public employee vaccination mandates were "created separately, and exist independently, of each other."

## MOTION TO DISMISS

Upon a motion to dismiss a complaint pursuant to CPLR §3211, a court must take the allegations in the complaint as true and resolve all inferences in favor of the plaintiff." *Morris v. Gianelli*, 71 AD3d 965, 967 [2d Dept. 2010]. A motion to dismiss should be granted where the Complaint fails to "contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory." *Matlin Patterson ATA Holdings LLC v. Fed. Express Corp.*, 87 AD3d 836, 839 (1st Dept. 2011).

CPLR §3211(a)(7) provides that "A party may move for judgment dismissing one or more causes of action asserted against him on the ground that…the pleading fails to state a cause of action." The Court will consider "whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail." *Guggenheimer v. Ginzburg*, 43 NY2d 268, 275

2

NYSCEF DOC. NO. 37
RECEIVED NYSCEF: 10/24/2022

(1977). Dismissal pursuant to CPLR 3211(a)(7) is warranted if the evidentiary proof disproves an essential allegation of the complaint, even if the allegations of the complaint, standing alone, could withstand a motion to dismiss for failure to state a cause of action. *Korinsky v. Rose*, 120 AD3d 1307, 1308 (2d Dept. 2014). Courts have repeatedly granted motions to dismiss where the factual allegations in the claim were merely conclusory and speculative in nature and not supported by any specific facts." *See Residents for a More Beautiful Port Washington, Inc. v. Town of North Hempstead*, 153 AD2d 727 [2d Dept. 1989]; *Stoianoff v. Gahona*, 248 AD2d 525 [2d Dept. 1998].

Respondents argue that the Petitioner's claims are time-barred by the applicable statute of limitations. Under CPLR Article 78, there is a four-month statute of limitations to bring a claim. Though the Respondents were terminated in February 2022, the statute of limitations would normally expire in June 2022. Typically, a termination decision becomes final and binding when a petitioner receives notice of their termination. *John v. New York City Dept. of Educ.*, 18 NY3d 457, 465-466 [2012]. However, the Court notes two very important dates that change the expiration of the statute of limitations. First, is the private exemption order issued by Mayor Adams in March 2022. Second, in June 2022, the Petitioners received letters from the Department of Sanitation, essentially being offered their jobs back if they were willing to comply with the vaccination mandate.

There are "two requirements for fixing the time when agency action becomes final and binding. First, the agency must have reached a definitive position on the issue…and second, the injury inflicted may not be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party." *Block 3066, Inc. v City of NY*, 89 AD3d 655, 656 [2d Dept 2011]. Clearly, the action by the Department of Sanitation in sending letters to the terminated employees means that the agency did *not* reach a definitive position on the issue. Furthermore, the issuance of a blanket exemption for certain professions by the Mayor's Executive Order No. 62 on March 24, 2022, which is a partial basis for this Action, opened the door to this litigation. Therefore, the Court finds this Article 78 filed timely, in light of the actions taken by the DSNY and the Mayor's Executive Order.

NYSCEF DOC. NO. 37                                    RECEIVED NYSCEF: 10/24/2022

## ARTICLE 78

Judicial review of the acts of an administrative agency under article 78 is limited to questions expressly identified by statute (*see* CPLR §7803; *Matter of Featherstone v. Franco*, 95 NY2d 550, 554 [2000]). CPLR §7803 states:

> The only questions that may be raised in a proceeding under this article are:
>
> 1. whether the body or officer failed to perform a duty enjoined upon it by law; or
>
> 2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or
>
> 3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or
>
> 4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence.
>
> 5. A proceeding to review the final determination or order of the state review officer pursuant to subdivision three of section forty-four hundred four of the education law shall be brought pursuant to article four of this chapter and such subdivision; provided, however, that the provisions of this article shall not apply to any proceeding commenced on or after the effective date of this subdivision.

Under CPLR Article 78, the Petitioners must establish that the agency determination or decision is so "lacking in reason for its promulgation that it is essentially arbitrary." *NY State Ass'n. of Counties v. Axelrod*, 78 NY2d 158, 166 (1991). The standard of review is "whether the regulation has a rational basis, and is not unreasonable, arbitrary, or capricious." *Matter of Consolation Nursing Home, Inc., v. Commr. Of New York State Dept. of Health*, 85 NY2d 326, 331-332 [1995]. The reviewing court "must be certain that an agency has considered all the important aspects of the issue and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *O'Rourke v. City of NY*, 64 Misc. 3d 1203 [A] [Sup. Ct. Kings County 2019]. The Court "may not substitute its own judgment of the evidence…but should review the whole record to determine whether there exists a rational basis to support the findings upon which the …determination is predicated." *Purdy v. Kreisberg*, 47 NY2d 354, 358 (1979). "Public health agencies, in particular, are entitled to a high degree of

judicial deference when acting in their area of their particular expertise." *C.F. v. NYC Dept. Of Health & Mental Hygiene,* 191 AD3d 52, 69 [2d Dept. 2020].

In reviewing alleged arbitrary and capricious administrative determinations, a reviewing court's function is limited to "whether the record contains sufficient evidence to support the rationality of the...determination." *Atlas Henrietta LLC v. Town of Henrietta Zoning Bd. Of Appeals,* 46 Misc. 3d 325, 332 [Sup. Ct. 2013] *aff'd,* 120 AD3d 1606 [2014]. Furthermore, "capricious action in a legal sense is established when an administrative agency on identical facts decides differently." *Italian Sons & Daughters, Inc. v. Common Council of Buffalo,* 453 NYS2d 962 [4th Dept. 1982].

The Mayor, in issuing Executive Order No. 62, made a different decision for similarly situated people based on identical facts. There is nothing in the record to support the rationality of keeping a vaccination mandate for public employees, while vacating the mandate for private sector employees or creating a carveout for certain professions, like athletes, artists, and performers. This is clearly an arbitrary and capricious action because we are dealing with identical unvaccinated people being treated differently by the same administrative agency. See *Italian Sons & Daughters, Inc. v. Common Council of Buffalo,* 453 NYS2d 962 [4th Dept. 1982].

Though not raised in the initial filing, this Court considered the fact that all but one of the Petitioners applied for exemptions from the mandate. They received generalized and vague denials. During that time their exemptions were being processed, they remained unvaccinated. There was no reason that they could not continue to submit to testing and continue to fulfill their duties as public employees. There was no reason why the City of New York could not continue with a vaccinate or test policy, like the Mayor's Executive Order that was issued in August 2021.[1]

The Court finds that in light of the foregoing, the vaccination mandates for public employees and private employees is arbitrary and capricious. There was nothing demonstrated in the record as to why there was a vaccination mandate issued for only public employees in October 2021. This Court notes that Covid-19 rates were averaging under 1,500 per day in October 2021, significantly lower than today's average Covid-19 rates.[2] There was nothing demonstrated in the record as to why the private sector mandate was issued months later in December 2021. There was

---

[1] See Mayor's Executive Order No. 78 issued on August 31, 2021. eo-78.pdf (nyc.gov), last accessed October 24, 2022.

[2] Tracking Coronavirus in New York, New York Coronavirus Map and Case Count - The New York Times (nytimes.com), last accessed October 24, 2022.

5

RECEIVED NYSCEF: 10/24/2022

nothing demonstrated in the record as to why exemptions were issued for certain professions in March 2022 under Executive Order No. 62. There was nothing demonstrated in the record as to why employees were kept at full duty during the months-long pendency of their exemption appeals. There was nothing demonstrated in the record as to why a titer was not an acceptable alternative to vaccination, other than a single CDC study entitled "New CDC Study: Vaccination Offers Higher Protection than Previous Covid-19 Infection" which was issued on August 6, 2021.[3]

Though vaccination should be encouraged, public employees should not have been terminated for their noncompliance. Over 79% of the population in New York City are vaccinated. These unvaccinated employees were kept at full duty while their exemptions were pending. Based upon the Petitioners' vague denials of their exemptions, the fact they were kept at full duty for several months while their exemptions were pending, the Mayor's Executive Order granting exemptions to certain classes of people, and the lifting of the private sector mandate, this Court finds the Commissioner's Orders of October 20, 2021, and December 13, 2021, as well as the Mayor's Executive Order No. 62 to be arbitrary and capricious.

### THE SEPARATION OF POWERS DOCTRINE

The New York City Charter empowers the DOHMH and the Board of Health with "jurisdiction to regulate all matters affecting health in the City of New York," which includes supervising the "control of communicable and chronic diseases and conditions hazardous to life and health" and providing "programs for the prevention and control of disease." NY City Charter §§ 556, 556(c)(2), 556(d)(5), and 558(c). The Charter empowers the City Council to "adopt local laws…for the preservation of the public health, comfort, peace and prosperity of the city and its inhabitants." *NY City Charter* 28[a]. The Charter restricts the Board of Health's rulemaking to the publication of a health code. *Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v. New York City Dept. of Health & Mental Hygiene*, 23 NY3d 681 [2014].

Furthermore, Section 17-109 of the Administrative Code empowers DOHMH to "add necessary additional provisions to the health code to most effectively prevent the spread of communicable disease…" Finally, Section 3.01(d) of the New York City Health Code provides, in part, that upon the declaration of a public health emergency, the DOHMH Commissioner "may

---

[3] New CDC Study: Vaccination Offers Higher Protection than Previous COVID-19 Infection, U.S. Centers for Disease Control, August 6, 2021 https://www.cdc.gov/media/releases/2021/s0806-vaccination-protection.html, last accessed 10/24/2022.

6

RECEIVED NYSCEF: 10/24/2022

establish procedures to be followed, issue necessary orders and take such actions as may be necessary for the health or safety of the City and its residents. Such procedures, orders or actions may include, but are not limited to…exercising any other power of the Board of Health to prevent, mitigate, control or abate an emergency, provided that such exercise of authority or power shall be effective only until the next meeting of the Board…" and at that meeting the Board can continue or rescind the Commissioner's exercise of authority.

"The concept of the separation of powers is the bedrock of the system of government." *Matter of NYC CLASH, Inc. v. New York State Off. Of Parks, Recreation, and Historic Preserv.*, 27 NY3d 178, 183 [2016]. An administrative agency usurps the authority of the legislative branch when it promulgates a rule that the legislature did not delegate it the authority to make in the first instance. *Id.* at 178; *Greater New York Taxi Ass'n v. NYC Taxi and Limousine Comm'n.*, 25 NY3d 600, 609 [2015]. "Separation of powers challenges often involve the question of whether a regulatory body has exceeded the scope of its delegated powers and encroached upon the legislative domain of policy making." *Garcia v. NY City Dept. of Health & Mental Hygiene*, 31 NY3d 601, 608 [2018].

To determine whether an administrative agency "has usurped the power of the Legislature, courts must consider whether the agency: (1) operated outside of its proper sphere of authority by balancing competing social concerns in reliance solely on its own ideas of sound public policy; (2) engaged in typical, 'interstitial' rulemaking or 'wrote on a clean slate, creating its own comprehensive set of rules without benefit of legislative guidance'; (3) 'acted in an area in which the Legislature has repeatedly tried- and failed- to reach agreement in the face of substantial public debate and vigorous lobbying by a variety of interested factions'; and (4) applied its 'special expertise or technical competence' to develop the challenged regulations." *See Matter of Acevedo v. NYS Dept. of Motor Vehs.*, 132 AD3d 112, 119 [3d Dept. 2015] *citing Boreali v. Axelrod*, 71 NY2d 1 at 12-14 [1987].

Applying the *Boreali* factors here, it appears that the Respondents are promulgating a rule on City employees. The Respondents instituted a policy for vaccination for all workers within New York City, by separate orders for public and private workers, however, as of November 1, 2022, the mandate is being lifted for only private sector employees. Though the Board of Health has the power to regulate vaccinations and adopt measures to reduce the spread of infectious diseases per Administrative Code 17-109, the Board of Health does not have the authority to

7

unilaterally and indefinitely change the terms of employment for any agency. Therefore, this Court
finds that the DOHMH has acted outside its proper sphere of authority.

As to the second *Boreali* prong, the Commissioner has, in effect, "wrote on a clean slate."
Terms of employment for City employees, such as residency requirements, are codified. There has
never been a vaccination requirement for employees. They are not vaccinated for seasonal flu, and
to this Court's understanding, they've never been required to provide other proof of vaccination.
As to the third prong, the legislature has made no attempts to legislate Covid-19 vaccination.
Finally, as to the fourth prong, the Health Commissioner, and the Board of Health, certainly used
their expertise to develop this Order.

This Court does not have a basis to disagree with *temporary* vaccination orders during a
public health emergency, however, ordering and enforcing that vaccination policy on only a
portion of the populace for an indefinite period of time, is akin to legislating. It appears that in
issuing this indefinite order, usurping the power of the legislature, the Health Commissioner has
acted beyond his authority. *See Boreali v. Axelrod*, 71 NY2d 1 [1987] and *See also Goldenstein,
et al v. NYC Dept. of Health, et al.* Index No. 85057/2022, wherein this Court used a similar
analysis in invalidating the "toddler mask mandate."

## THE AUTHORITY OF THE HEALTH COMMISSIONER

The Health Commissioner's Order of October 13, 2021, states that "any City employee
who has not provided the proof described in Paragraph 2 must be excluded from the premises at
which they work beginning on November 1, 2021."[4]  The Petitioners claim that the Respondents
do not have the power or authority to exclude the Petitioners from entering their workplace and
that the Commissioner exceeded the scope of his authority. This Court agrees that the
Commissioner cannot enact a term of employment on City employees and has exceeded his scope
of authority based upon the separation of powers discussion above.

The Respondents, in arguing that the Commissioner can set a condition of employment,
heavily rely on a recent case in the Appellate Division, Second Department, *CF v. NYC Dept. of
Health & Mental Hygiene*, 191 AD3d 52 [2d Dept. 2020]. In the *CF* matter, the DOHMH issued
a mandatory vaccination requirement on residents arising out of a severe measles outbreak in

---

[4] Supplemental Order of the Commissioner of Health and Mental Hygiene to Require Covid-19 Vaccination for City
Employees and Employees of Certain City Contractors. covid-19-vaccination-requirement-contractors-
supplemental.pdf (nyc.gov) last accessed 10/21/2022

8

NYSCEF DOC. NO. 37                                                    RECEIVED NYSCEF: 10/24/2022

Brooklyn, New York. The Court in that matter found that the decisions of public health officials to declare mandatory vaccine requirements are not arbitrary, capricious, or an abuse of discretion, *CF v. NYC Dept. of Health & Mental Hygiene*, 191 AD3d 52, 64-65 [2d Dept. 2020]. However, this Court notes that in Brooklyn, failure to comply with the measles vaccination requirement resulted in fines for each day of noncompliance. Furthermore, the Second Department Appellate Division reserved on whether the fines imposed upon violation were excessive. The Court specifically stated that "in the event that fines are imposed upon any person for violation of the Board's resolution, such person is free to argue in an appropriate proceeding that the fine is so disproportionate that it is an abuse of discretion, as well as to argue that the fine is so grossly disproportionate to the gravity of the offense as to be constitutionally excessive." *Id.* Finally, upon this Court's own research, only three people were fined for noncompliance.[5] This Court notes that the DOHMH order requiring mandatory vaccination requirements in certain areas of Brooklyn were *temporary* and believes that termination in the instant proceeding is excessive.

The respondents further cite to a series of cases that permit vaccination mandates as a "condition of employment." However, none of these cases address the authority of the Health Commissioner to enact a term of employment under the Health Code to City employees. Nor, does the Order give authority to City agencies to terminate employees. *See Police Benevolent Association of the City of New York, Inc. on behalf of its Members, Patrick J. Lynch v. City of New York, at al*, Index 151531/2022. In another matter, healthcare workers were terminated for failure to comply with a "condition of employment" as they refused Covid-19 vaccination. *See We the Patriots USA v. Hochul*, 17 F.4th 266, 287 [2d Cir. 2021]. There is a key difference in the instant case. DSNY workers have *never* been required to be vaccinated as a condition of employment, while healthcare workers have *always* been required to be vaccinated against infectious diseases. *Id.* Members of the DSNY cannot be equated to healthcare workers.

Respondents argue that the "nature of petitioner's job as DSNY employees necessarily entails contact with NYC civilians- *hundreds of thousands of whom are unvaccinated.*" This argument is patently incorrect. The Petitioners work primarily outdoors and have limited interaction with the public. Those "hundreds of thousands of whom are unvaccinated" are

---

[5] ABC News, New York City issues fines of $1000 to 3 people who refused to be vaccinated against measles, New York City issues fines of $1,000 to 3 people who refused to be vaccinated against measles - ABC News (go.com) last accessed 10/21/2022.

NYSCEF DOC. NO. 37                                                     RECEIVED NYSCEF: 10/24/2022

responsible for their own health. They choose for themselves whether to be vaccinated or whether to risk infection. City employees should also have the right to make their own choice regarding their own health.

The Petitioners are members of a union that collectively bargained for a contract with the City of New York. The contract, in effect from January 20, 2019, until December 27, 2022, makes absolutely no mention of any vaccination as a condition of or prerequisite to employment.[6] How can a "condition of employment" be created during the term of employment? This Court believes that a new "condition of employment" cannot be imposed upon these employees when the "condition" did not exist when they accepted contracted employment. The Court is aware that the Petitioners' union bargained for a process regarding exemptions *after* the enactment of this vaccination mandate. Based upon this bargaining, the Court is not finding a breach of contract and notes that the Petitioners have other avenues for relief regarding the collective bargaining process and their rights as labor employees.

Finally, states of emergency are meant to be *temporary*. The question presented is whether the Health Commissioner has the authority to enact a permanent condition of employment during a state of emergency. This Court finds that the Commissioner does not have that authority and has acted beyond the scope of his authority under the Public Health Law and in violation of separation of powers. The Petitioners herein should not have been terminated for their failure to comply with the Commissioner's Order during a *temporary* state of emergency.

## THE NY CONSTITUTION

Under the NY Constitution Article 1, §11, "No person shall be denied the equal protection of the laws of this state or any subdivision thereof." The purpose of this clause is to keep "governmental decisionmakers from treating differently persons who are in all relevant aspects alike." *Nicholas v. Tucker, 114 F3d 17, 20 [2d Cir. 1997].* Where government action draws a distinction between classes of people, "the classification must be reasonable and must be based upon some ground of difference that rationally explains the different treatment." *People v. Liberta.* 64 NY2d 152, 163 [1984]. Under the NY Constitution Article I, §7, no person may be deprived of life, liberty, or property without due process of the law.

---

[6] Executed Contract: Sanitation Workers. Plaintiff's Exhibit 5. https://iapps.courts.state.ny.us/ nyscef/ViewDocument?docIndex=spsCWGtfYfFBQD_PLUS_KiHyuYA==, last accessed 10/21/2022.

10

This Court finds that based upon the analysis above, the Commissioner's Order of October 20, 2021, violated the Petitioners' equal protection rights as the mandate is arbitrary and capricious. The City employees were treated entirely differently from private sector employees, and both City employees and private sector employees were treated entirely differently from athletes, artists, and performers. All unvaccinated people, living or working in the City of New York are similarly situated. Granting exemptions for certain classes and selectively lifting of vaccination orders, while maintaining others, is simply the definition of disparate treatment. Furthermore, selective enforcement of these orders is also disparate treatment.[7]

There is no doubt that vaccination mandates were enacted in the furtherance of a legitimate governmental purpose. *See McMinn v. Town of Oyster Bay,* 66 NY2d 544, 549 [1985]. However, there must be a reasonable relation between the end sought to be achieved and the means used to achieve that end. *Id.* Though City employees are often held to a higher standard than employees in the private sector, there is no rational reason for vaccination mandates to distinguish City workers, athletes, performers, and other private sector employees. "All persons...shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." *Engquist v. Oregon Dept. of Agr.,* 553 US 591 [2008]. Either there is a mandate for all, or there is a mandate for none.

## CONCLUSION

It is clear that the Health Commissioner has the authority to issue public health mandates. No one is refuting that authority. However, the Health Commissioner cannot create a new condition of employment for City employees. The Health Commissioner cannot prohibit an employee from reporting to work. The Health Commissioner cannot terminate employees. The Mayor cannot exempt certain employees from these orders. Executive Order No. 62 renders all of these vaccine mandates arbitrary and capricious.

Being vaccinated does not prevent an individual from contracting or transmitting Covid-19. As of the day of this Decision, CDC guidelines regarding quarantine and isolation are the same for vaccinated and unvaccinated individuals. The Petitioners should not have been terminated for

---

[7] It is worth noting by this Court, that neither party addressed the enforcement of the private sector vaccine mandate. It's unclear to this Court whether anyone was actually terminated under the private sector vaccine mandate or whether any businesses were fined. However, it is clear that enforcement of the private sector mandate is lacking: "Adams administration is not inspecting companies for vaccine mandate compliance," New York 1, City not inspecting businesses vaccine mandate compliance (ny1.com), last accessed 10/24/2022.

11

RECEIVED NYSCEF: 10/24/2022

choosing not to protect themselves. We have learned through the course of the pandemic that the vaccine against Covid-19 is not absolute. Breakthrough cases occur, even for those who have been vaccinated and boosted. President Joseph Biden has said that the pandemic is over.[8] The State of New York ended the Covid-19 state of emergency over a month ago.[9]

As this Court stated in its decision in the *Rivicci* matter, this is not a commentary on the efficacy of vaccination, but about how we are treating our first responders, the ones who worked day-to-day through the height of the pandemic. *See Rivicci v. NYC Fire Dept.*, Index No. 85131/2022. They worked without protective gear. They were infected with Covid-19, creating natural immunity. They continued working full duty while their exemption requests were pending. They were terminated and are willing to come back to work for the City that cast them aside.

The vaccination mandate for City employees was not just about safety and public health; it was about compliance. If it was about safety and public health, unvaccinated workers would have been placed on leave the moment the order was issued. If it was about safety and public health, the Health Commissioner would have issued city-wide mandates for vaccination for all residents. In a City with a nearly 80% vaccination rate, we shouldn't be penalizing the people who showed up to work, at great risk to themselves and their families, while we were locked down.

If it was about safety and public health, no one would be exempt. It is time for the City of New York to do what is right and what is just.

Accordingly, it is hereby

**ORDERED** that the Petition is granted.

**ORDERED** that a declaratory judgment is granted in that the Commissioner of Health and Mental Hygiene's order dated October 20, 2021, violates the separation of powers doctrine under NY Constitution Article III, §1.

**ORDERED** that a declaratory judgment is granted in that the Commissioner of Health and Mental Hygiene's order dated October 20, 2021, violates the Petitioners' equal protection rights pursuant to NY Constitution Article I, §11.

---

[8] Biden says Covid-19 pandemic is "over" in US. Biden says COVID-19 pandemic is "over" in U.S. - CBS News, last accessed 10/24/2022.
[9] New York state ends covid emergency; Hochul encourages new booster shot, New York state ends Covid emergency; Hochul encourages new booster shot - syracuse.com, last accessed 10/24/2022.

12

**ORDERED** that a declaratory judgment is granted in that the Commissioner of Health and Mental Hygiene's order dated October 20, 2021, violates the Petitioners' substantive and procedural due process rights pursuant to NY Constitution Article I, §6.

**ORDERED** that a declaratory judgment is granted in that this Court finds that the Commissioner lacks the power and authority to permanently exclude the Petitioners from their workplace.

**ORDERED** that this Court finds the Commissioner of Health and Mental Hygiene's order dated October 20, 2021, arbitrary and capricious pursuant to CPLR §7803.

**ORDERED** that this Court finds the Commissioner of Health and Mental Hygiene's order dated December 13, 2021, arbitrary and capricious pursuant to CPLR §7803.

**ORDERED** that this Court finds the Mayor's Executive Order No. 62 arbitrary and capricious pursuant to CPLR §7803.

**ORDERED** that the Petitioners' claim for breach of contract is denied.

**ORDERED** that the terminated Petitioners are hereby reinstated to their full employment status, effective October 25, 2022, at 6:00AM.

**ORDERED** that the Petitioners are entitled to back pay in salary from the date of termination.

**ORDERED** that the Petitioners are directed to submit a proposed judgment regarding back pay consistent with this decision on or before November 10, 2022.

This constitutes the Decision and Order of the Court.

Date: October 24, 2022

ENTER

HON. RALPH J. PORZIO
J.S.C.

13

**PLAINTIFFS EXHIBIT  D**



**Allstate**
You're in good hands.

August 3, 2022

*SENT VIA EMAIL AND FEDEX*

Malachy P. Lyons, Jr.
1440 Ackerson Blvd
Bay Shore, NY 11706
mlyov@allstate.com

Dear Malachy,

This letter is your official notification that Allstate Insurance Company ("Allstate" or the "Company") deems your willful failure to comply with one or more conditions of your employment, despite Allstate's having repeatedly notified you of those conditions, to represent your voluntary resignation of your employment with Allstate. Your employment with Allstate is terminated effective immediately, today, August 3, 2022, and all employee benefits will cease as of that date.

As Allstate has made you aware, your job duties as a Senior Trial Attorney who is responsible for handling Allstate cases in the New York area requires you to be available to perform in-person work, including in-court appearances, in the City of New York. As you know, Allstate has maintained a policy whereby any employee whose job requires them to be available to conduct in-person work in New York City is therefore obligated to comply with New York City's workplace vaccination requirement (Commissioner's Order Requiring COVID-19 Vaccination in the Workplace (Dec. 13, 2021)). As such, Allstate has required you to either (a) submit proof of a COVID-19 vaccination in compliance with the NYC law, or alternatively, (b) be granted an accommodation from the vaccination requirement and comply with the accommodation's conditions.

In March 2022, you sought from Allstate HR an accommodation on religious grounds to be exempt from the NYC COVID-19 vaccination requirement. Allstate granted your accommodation request. As a condition of that exemption, Allstate informed you that you are required to submit weekly PCR COVID-19 test results as well as wear a face covering whenever you were conducting in-person work in New York City. On April 13, 2022, Allstate emailed you the following and you replied, verifying receipt:

> "Your accommodation is weekly PCR testing and, for any instance in which you enter NYC for work purposes, you must be masked at all times when not eating or drinking. Any eating or drinking must occur at least six feet away from others. Testing must be completed every week after 8:00 AM on Fridays and results must be submitted in the system by 8:00 AM on Mondays. The testing must be completed each week regardless of when you enter NYC for work purposes."

You have not complied with the terms of your accommodation such that you have not submitted any COVID-19 tests to Allstate. As such, you have been unavailable to conduct in-person work in New York City despite this availability being a condition of your employment. Your willful failure to meet the conditions of your employment, despite those conditions being known to you, represent a voluntary resignation of your employment.

**Information Concerning End of Employment:**

You will receive information concerning the continuation of health insurance benefits according to the Consolidated Omnibus Budget Reconciliation Act (COBRA) under separate cover.

You will receive your final paycheck, which includes your wages through the date of termination and any accrued but unused PTO in accordance with the Company's normal payroll procedures.

Please remember that following the end of your employment with the Company, you will continue to be bound by the terms of all prior agreements that you have signed during or in connection with your employment by the Company. You are obligated to continue to protect confidential, proprietary and trade secret information, and Allstate will take appropriate action to protect its confidential, proprietary and trade secret information to prevent and mitigate any misappropriation or interference with its business interests.

You must immediately return all Company property in your possession, including, but not limited to your laptop computer and ID badge, plus and any materials of any kind that contain or constitute any proprietary or confidential information (and all reproductions thereof).

Enclosed for your convenience is a Record of Employment form which you may use to apply for unemployment benefits from New York State. Whether you receive such unemployment benefits is the decision of the Department of Labor, and not the Company. [You may fill in the top section as follows: Date Given to Employee: 08/03/2022; NYS Employer Registration No.: Redacted; Federal Employer Identification No.: Redacted; Employer Name: Allstate Insurance Company; Payroll Records are kept at: Redacted

If you have any questions regarding your employment, please consult the enclosed "Useful Numbers" document. We wish you luck in your future endeavors.

Sincerely,

# Redacted

Allstate Insurance Company
Director, Human Resources: Workforce Relations, Policy, and Compliance

Enclosures:
Record of Employment (For Unemployment Insurance Purpose only); and, Useful Numbers

**PLAINTIFFS EXHIBIT  E**

| From: | Allstate HR Direct |
|---|---|
| To: | Lawrence, Karen L. |
| Subject: | New York City COVID-19 Vaccination Mandate |
| Date: | Wednesday, December 22, 2021 3:05:31 PM |

96

## Highlights

- **This communication is only relevant for you if you do in-person business in the five boroughs of New York City.**
- New York City has implemented a COVID-19 vaccination mandate that all employers of any type must require employees who carry out in-person job duties in the five boroughs of NYC to have at least one dose of a COVID-19 vaccine by Dec. 27.
- Allstate will comply with this order while maintaining employee choice as part of our value proposition.
- Employees who choose to remain unvaccinated will need to work remotely or be encouraged to fill internal roles that do not require in-person work.

Hello,

Recently, New York City implemented a COVID-19 vaccination mandate for the five boroughs that all employers of any type must require employees who carry out in-person job duties in New York City to have at least one dose of a COVID-19 vaccine by Dec. 27. Consistent with our guiding principles to comply with regulations and keep employees and customers safe, Allstate employees conducting business in New York City are required to have at least one dose of a COVID-19 vaccine by Dec. 27.

You're receiving this email because your role may require you to conduct in-person business in the five boroughs of New York City. If you don't conduct work in-person, you are not required to provide vaccine information at this time. However, if these requirements roll out enterprise-wide, uploading proof of vaccination may be a requirement in the future.

**What is in-person work?**

You perform in-person work if you meet face-to-face with another person to conduct Allstate business -- this may include working with colleagues in Allstate offices or conducting fieldwork with clients, vendors, customers, etc.

**How do I provide proof of vaccination?**

If you plan to conduct in-person business in New York City, you must self-attest that you have received at least one dose of the COVID-19 vaccine using this form by Dec. 27.

On or after Jan. 4, 2022, you will receive an email from Redacted@AllstateGoodLife.com asking you to provide proof of vaccination through Alight Verify on AllstateGoodLife.com. Please follow the steps in the email and upload your proof of vaccination.

If you choose to remain unvaccinated, you will need to work remotely. If your job duties can't be performed remotely, we encourage you to talk to your manager or seek internal roles that do not require in-person work.

Please also refer to the FAQ for further information. In addition to this new requirement, all employees must follow the required safety protocols, including mask wearing and social distancing at all times, as outlined in our Return to Workplace Snapshot.

We appreciate your support as we all work to keep employees and customers safe. If you have any questions, email Redacted     @allstate.com.

© 2021 Allstate Insurance Company - All Rights Reserved

**PLAINTIFFS EXHIBIT   F**

| | |
|---|---|
| **From:** | HRCERT |
| **To:** | Lyons, Jr., Malachy P. |
| **Cc:** | Korn, Gary; Lawrence, Karen L. |
| **Subject:** | Action Required: COVID-19 Vaccination Status Reporting (NYC Mandate) |
| **Date:** | Friday, February 18, 2022 12:38:00 PM |

Malachy,

On December 22, 2021, you received an email about New York City's COVID-19 vaccination mandate and Allstate's plan to comply with it. As a reminder, the mandate calls for all employers of any type to require employees who carry out in-person job duties in New York City to have at least one dose of a COVID-19 vaccine. You have either not provided a Vaccination Status through AllstateGoodLife.com or have indicated your status as "Not Vaccinated."

If you have not provided your Vaccination Status to date:
**The essential functions of your job require in person work and, as such, you are required to do one of the following by Friday, March 11:**

1. Provide Allstate with proof that you have received at least one dose of a COVID-19 vaccine on AllstateGoodLife.com. Select the "Verify Your COVID-19 Vaccination Status" tile from the home page.
2. Submit a Request for Accommodation on religious or medical grounds per New York City law which, if granted, will permit you to continue your current role if you submit to weekly PCR testing and always wear a face mask when performing in-person work in New York City. Submit your request on AllstateGoodLife.com by selecting the "Verify Your COVID-19 Vaccination Status" tile from the home page, then click verify and choose "Not Vaccinated."
3. If you do not want to get vaccinated and do not qualify for an accommodation, you also have the option to find a new role within Allstate which does not require in-person work in New York City.

If you have indicated your status as "Not Vaccinated":
**The essential functions of your job require in person work and, as such, you are required to do one of the following by Friday, March 11:**

1. If your Vaccination Status has updated since your original submission, provide Allstate with proof that you have received at least one dose of a COVID-19 vaccine on AllstateGoodLife.com. Select the "Verify Your COVID-19 Vaccination Status" tile from the home page.
2. Submit a Request for Accommodation on religious or medical grounds per New York City law which, if granted, will permit you to continue your current role if you submit to weekly PCR testing and always wear a face mask when performing in-person work in New York City. Submit your request on AllstateGoodLife.com by selecting the "Verify Your COVID-19 Vaccination Status" tile from the home page, then click verify and choose "Not Vaccinated."
3. If you do not want to get vaccinated and do not qualify for an accommodation, you also

have the option to find a new role within Allstate which does not require in-person work in New York City.

We appreciate your support as we all work to keep employees and customers safe. If you have any questions, feel free to address with your manager.

Thank You,
Centralized Employee Relations Team | CERT
Redacted @allstate.com

CONFIDENTIAL
This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this copy from your system. Thank you for your cooperation.

**PLAINTIFFS EXHIBIT   G**

# Request for Accommodation from Vaccination: Religious Exemption Request
### *For Employees in Roles Requiring Vaccination ONLY*

---

### *To be completed by employee ONLY*

Employee Name:    Malachy Lyons

SAP Number/Employee ID Number:    00164449

Job Title:    Attorney

Department/AOR:    Lit Serv -Garden City SCO Team 3 (52001056

Manager Name:    Gary Korn

**A. Question to help determine whether you are working in a role for which Company policy requires you to be fully vaccinated against COVID-19 as a condition of continued employment:**

Are you working in a role in which you – at any time, or in any way – interact in person with customers, agents, co-workers, and/or sales partners OR in which you perform field work?

Yes ¨   x    No ¨

If you marked "No" to Question A above, then you *DO **NOT*** work in a role for which Company policy requires you to be fully vaccinated against COVID-19 and you therefore may be eligible for weekly testing against COVID-19 in lieu of vaccination. **Please return to the Alight Verify module to complete the verification process by selecting unwilling.** Please contact the Allstate Benefit Center with any questions related to Alight Verify. If you have questions related to Allstate's COVID-19 policy, please contact HRcomply@allstate.com.

If you marked "Yes" to Question A above, then you *DO* work in a role for which Company policy requires you to be fully vaccinated against COVID-19 as a condition of working in that role. Please have a medical professional complete the form below **if you cannot get vaccinated** due to a disability (as defined by applicable law), pregnancy (or childbirth or a related medical condition), being a nursing mother, having a documented medical condition that contraindicates the vaccination, or any other trait, characteristic, or class for which applicable law requires the Company to provide reasonable workplace accommodations. All medical information received by the Company in connection with a request for accommodation will be treated as confidential.

---

**B. Describe in detail the religious belief or practice that necessitates this request for accommodation:**

God has given me my religious conscience and my sincerely held religious belief prevents me from taking any of these three vaccines, Moderna, Pfizer, and Johnson & Johnson. My Sincerely held religious belief is that Abortion is killing and is against the law of God. God has Commanded that "we shall not kill". It is my sincerely held religious belief that abortion is the most evil act ever committed by mankind, it is the deliberate, premeditated and systematic killing of innocent and helpless babies. All three of these Covid -19 Vaccines have a connection to abortion and are derived from testing on or development from the fetal cell lines from abortion/killed babies. It is my sincere religious belief that God prohibits me from ingesting into my body or attempting to benefit from any of these three Covid -19 vaccines because they originate from abortion. It is my sincere religious belief that if I took any of these three vaccines I would be condoring the evil act of abortion and I would be complicit in the killing of killing these babies. It is my sincere religious belief that if I take any of these vaccines, I will be committing a grave sin against God and I will not be able to enjoy eternal life in Heaven and spend eternity in Hell. These are the only Covid –19 vaccines available. There are no others.

By submitting this form, I certify that receiving a COVID-19 vaccination is against my ***sincerely held*** religious beliefs. I understand that the Company may need to obtain supporting documentation regarding my religious practice and beliefs to further evaluate this accommodation request. By submitting this form, I also certify that the information I am submitting is true and accurate to the best of my knowledge. I understand that any false information can lead to disciplinary action, up to and including termination. I further understand that the Company is not required to provide this accommodation if doing so would pose a direct threat to myself or others or would create an undue hardship for the Company.

Employee Signature:    Malachy P. Lyons _____

Date:    03/10/2022 _____

**PLAINTIFFS EXHIBIT  H**



**From:** Redacted
**Sent:** Friday, March 25, 2022 2:18 PM
**To:** Lyons, Jr., Malachy P. <mlyov@allstate.com>
**Cc:** Redacted                    @allstate.com>
**Subject:** RE: Vaccine Exemption-Religious

Hello Malachy,

Thank you so much for meeting with me today.  As we discussed, in the event you work in the NYC 5 burrows weekly PCR testing is required and, you should be masked at all times when not eating or drinking.   Please note that I am going to deny your exemption request since these is no accommodation needed.  It was a pleasure speaking to you today. Have a great weekend.

Thanks,


# Redacted

**HR-Workforce Relations Lead Consultant**
**Allstate Insurance Company**
***2775 Sanders Rd, STE A1W***
***Northbrook, IL 60062***
Redacted    *@allstate.com*



-----Original Appointment-----
**From:** Redacted
**Sent:** Thursday, March 24, 2022 5:06 PM
**To:** Redacted          ; Lyons, Jr., Malachy P.
**Subject:** Vaccine Exemption-Religious
**When:** Friday, March 25, 2022 2:00 PM-2:25 PM (UTC-06:00) Central Time (US & Canada).
**Where:** https://allstate.zoom.us/j/91821221939?
pwd=NoJCZXhwcTdRZF3jWU8vZmhwRE1kQT09&from=addon

Your accommodation is weekly PCR testing and, for any instance in which you enter NYC for work purposes, you must be masked at all times when not eating or drinking. Any eating or drinking must occur at least six feet away from others.

Testing must be completed every week after 8:00 AM on Fridays and results must be submitted in the system by 8:00 AM on Mondays. The testing must be completed each week regardless of when you enter NYC for work purposes.

Please let me know if you have any questions, feel free to schedule a meeting if you would like to discuss further.

To submit your weekly test results, follow the process below:

Go to the Verify tile on AllstateGoodLife.com:



Scroll to the bottom and click on "Submit Covid-19 Results." Complete the information as requested.

**PLAINTIFFS EXHIBIT   I**



**From:** Redacted
**Sent:** Friday, March 25, 2022 2:18 PM
**To:** Lyons, Jr., Malachy P. <mlyov@allstate.com>
**Cc:** Redacted                           @allstate.com>
**Subject:** RE: Vaccine Exemption-Religious

Hello Malachy,

Thank you so much for meeting with me today.  As we discussed, in the event you work in the NYC 5 burrows weekly PCR testing is required and, you should be masked at all times when not eating or drinking.   Please note that I am going to deny your exemption request since these is no accommodation needed.  It was a pleasure speaking to you today. Have a great weekend.

Thanks,

# Redacted

**HR-Workforce Relations Lead Consultant**
**Allstate Insurance Company**
*2775 Sanders Rd, STE A1W*
*Northbrook, IL 60062*
Redacted    *@allstate.com*



-----Original Appointment-----
**From:** Redacted
**Sent:** Thursday, March 24, 2022 5:06 PM
**To:** Redacted          ; Lyons, Jr., Malachy P.
**Subject:** Vaccine Exemption-Religious
**When:** Friday, March 25, 2022 2:00 PM-2:25 PM (UTC-06:00) Central Time (US & Canada).
**Where:** https://allstate.zoom.us/j/91821221939?
  pwd=NnJCZXhwcTdRZF3jWU8vZmhwRE1kQT09&from=addon

**PLAINTIFFS EXHIBIT   J**



Thanks,

# Redacted

**HR-Workforce Relations Lead Consultant**
**Allstate Insurance Company**
*2775 Sanders Rd, STE A1W*
*Northbrook, IL 60062*
Redacted        *@allstate.com*



**From:** Redacted
**Sent:** Friday, March 25, 2022 7:10 PM
**To:** Lyons, Jr., Malachy P. <mlyov@allstate.com>
**Cc:** Redacted                    @allstate.com>
**Subject:** RE: Vaccine Exemption-Religious

Hello Malachy,

I'm sorry I misspoke below when I said the exemption would be denied. It is approved and the accommodation would be in the event you worked in the NYC 5 burrows weekly PCR testing is required and, you should be masked at all times when not eating or drinking.

Thanks,

# Redacted

**HR-Workforce Relations Lead Consultant**
**Allstate Insurance Company**
*2775 Sanders Rd, STE A1W*
*Northbrook, IL 60062*
Redacted        *@allstate.com*

**PLAINTIFFS EXHIBIT   K**

**From:** Redacted
**Sent:** Wednesday, April 13, 2022 5:47 PM
**To:** Lyons, Jr., Malachy P. <mlyov@allstate.com>
**Subject:** RE: Vaccine Exemption-Religious

Hello Malachy,

I received an update yesterday regarding the testing guidelines for this accommodation.

Your accommodation is weekly PCR testing and, for any instance in which you enter NYC for work purposes, you must be masked at all times when not eating or drinking. Any eating or drinking must occur at least six feet away from others.

Testing must be completed every week after 8:00 AM on Fridays and results must be submitted in the system by 8:00 AM on Mondays. The testing must be completed each week regardless of when you enter NYC for work purposes.

Please let me know if you have any questions, feel free to schedule a meeting if you would like to discuss further.

# PLAINTIFFS EXHIBIT   L

**From:** Lyons, Jr., Malachy P. <mlyov@allstate.com>
**Sent:** Thursday, April 14, 2022 10:40 AM
**To:** Redacted                                    @Allstate.com>
**Cc:** Korn, Gary <^Redacted @Allstate.com>
**Subject:** RE: Vaccine Exemption-Religious

Hi Redacted, I see this email is addressed to ^Redacted. Is this email also pertaining to me? If it is, please explain; what is the required PCR Testing? Is it an at home test? Is this now an Allstate company/nation wide requirement? Or; is this the Allstate position to be in compliance with the NYC Vaccine Mandate?

As you know, I am a home-based worker. In fact, I have not performed any type of in-person work for Allstate anywhere for more than two years.   All my work for Allstate has been performed exclusively from home.  I perform the essential functions of my job with Allstate 100% from home.  Since Allstate designated me as a Home-Based Worker, more than two years ago, I have safely worked from home and I have not been exposed to anyone with Covid.  I have never been infected with Covid and I have never had any reason to visit a medical provider to test for Covid.  I am perfectly safe and free from any chance of getting Covid working from home.  If the PCR test is not a home test, then it would be unreasonable for Allstate to now, after all this time, require me to leave the safety of my home for the sole purpose to visit a health care provider each and every week for an undetermined and indefinite period of time.  If the PCR Test is not a home test, it would be unreasonable for Allstate to require that I, a perfectly healthy person, with no symptoms of Covid, subject myself to having a health care provider insert some instrument into my nose each and every week for an indefinite and undetermined period of time.  If I am required by Allstate to visit a medical provider for the sole purpose of testing for covid, it is possible, and you must acknowledge that fact, that I can contact and be infected with Covid, during any of those visits to the testing medical provider.  It would be unreasonable for Allstate to subject me to the risk of Covid exposure each and every week for an undetermined and indefinite period of time.   Thank you very much for your time in explaining if this email pertains to me, and if it does, the type of testing required.  Thank you, Malachy.


**From:** Redacted                                    @Allstate.com>
**Sent:** Wednesday, April 13, 2022 5:47 PM
**To:** Lyons, Jr., Malachy P. <mlyov@allstate.com>
**Subject:** RE: Vaccine Exemption-Religious

Hello Malachy,

I received an update yesterday regarding the testing guidelines for this accommodation.

**PLAINTIFFS EXHIBIT   M**

**From:** Redacted <@Allstate.com>
**Sent:** Thursday, April 14, 2022 12:56 PM
**To:** Lyons, Jr., Malachy P. <mlyov@allstate.com>
**Cc:** Korn, Gary <Redacted @Allstate.com>
**Subject:** RE: Vaccine Exemption-Religious

Hello Malachy,

Thank you for responding to my email. Yes, the email does pertain to you, Omid was in the template, and I didn't update your name (I updated it below). If you are a homebased worker and do not plan on going to NYC for work purpose (conferences, court, meetings, etc.) then you do not need an accommodation and the weekly testing will no longer be applicable. Please confirm if this is the case. If so, I will change your status to "denied".

Thanks,

# Redacted

**HR-Workforce Relations Lead Consultant**
**Allstate Insurance Company**
*2775 Sanders Rd, STE A1W*
*Northbrook, IL 60062*
Redacted        *@allstate.com*

**PLAINTIFFS EXHIBIT   N**

**From:** Korn, Gary <Redacted @Allstate.com>
**Sent:** Tuesday, April 19, 2022 3:55 PM
**To:** Lawrence, Karen L. <Redacted     @Allstate.com>
**Subject:** FW: Vaccine Exemption-Religious

Karen,

Please see below concerning Malachy Lyons. Please let me know when you are available to discuss how to proceed.
Thank you,

Gary

**From:** Lyons, Jr., Malachy P. <mlyov@allstate.com>
**Sent:** Thursday, April 14, 2022 2:09 PM
**To:** Korn, Gary <gkorn@Allstate.com>
**Subject:** FW: Vaccine Exemption-Religious

**From:** Redacted                              @Allstate.com>
**Sent:** Thursday, April 14, 2022 12:56 PM
**To:** Lyons, Jr., Malachy P. <mlyov@allstate.com>
**Cc:** Korn, Gary <Redacted @Allstate.com>
**Subject:** RE: Vaccine Exemption-Religious

Hello Malachy,

Thank you for responding to my email. Yes, the email does pertain to you, Omid was in the template, and I didn't update your name (I updated it below). If you are a homebased worker and do not plan on going to NYC for work purpose (conferences, court, meetings, etc.) then you do not need an accommodation and the weekly testing will no longer be applicable. Please confirm if this is the case. If so, I will change your status to "denied".

Thanks,

# Redacted

**HR-Workforce Relations Lead Consultant**
**Allstate Insurance Company**
*2775 Sanders Rd, STE A1W*
*Northbrook, IL 60062*
Redacted     *@allstate.com*

**PLAINTIFFS EXHIBIT   O**

**From:** Korn, Gary <*Redacted* @Allstate.com>
**Sent:** Tuesday, April 19, 2022 3:55 PM
**To:** Lawrence, Karen L. <Redacted    @Allstate.com>
**Subject:** FW: Vaccine Exemption-Religious

Karen,

Please see below concerning Malachy Lyons. Please let me know when you are available to discuss how to proceed.
Thank you,

Gary

**From:** Lyons, Jr., Malachy P. <mlyov@allstate.com>
**Sent:** Thursday, April 14, 2022 2:09 PM
**To:** Korn, Gary <gkorn@Allstate.com>
**Subject:** FW: Vaccine Exemption-Religious

**From:** Redacted                              @Allstate.com>
**Sent:** Thursday, April 14, 2022 12:56 PM
**To:** Lyons, Jr., Malachy P. <mlyov@allstate.com>
**Cc:** Korn, Gary <*Redacted* @Allstate.com>
**Subject:** RE: Vaccine Exemption-Religious

Hello Malachy,

Thank you for responding to my email. Yes, the email does pertain to you, Omid was in the template, and I didn't update your name (I updated it below). If you are a homebased worker and do not plan on going to NYC for work purpose (conferences, court, meetings, etc.) then you do not need an accommodation and the weekly testing will no longer be applicable. Please confirm if this is the case. If so, I will change your status to "denied".

Thanks,

# Redacted

**HR-Workforce Relations Lead Consultant**
**Allstate Insurance Company**
**2775 Sanders Rd, STE A1W**
**Northbrook, IL 60062**
Redacted        @allstate.com

**PLAINTIFFS EXHIBIT   P**

| | |
|---|---|
| **From:** | Redacted |
| **To:** | Lawrence, Karen L. |
| **Cc:** | Korn, Gary; Lyons, Jr., Malachy P. |
| **Subject:** | RE: Vaccine Exemption-Religious |
| **Date:** | Tuesday, April 19, 2022 3:23:12 PM |
| **Attachments:** | image002.png |
| | image003.png |
| | image004.jpg |
| | image005.jpg |

Hi Karen,

Malachy's accommodation is weekly PCR testing and, for any instance in which you enter NYC for work purposes, you must be masked at all times when not eating or drinking. Any eating or drinking must occur at least six feet away from others.

Testing must be completed every week after 8:00 AM on Fridays and results must be submitted in the system by 8:00 AM on Mondays. The testing must be completed each week regardless of when you enter NYC for work purposes.

Please let me know if you have any questions, feel free to schedule a meeting if you would like to discuss further.

Thanks,
# Redacted

**HR-Workforce Relations Lead Consultant**
**Allstate Insurance Company**
***2775 Sanders Rd, STE A1W***
***Northbrook, IL 60062***
Redacted    *@allstate.com*



**From:** Lawrence, Karen L. <Karen.Lawrence@Allstate.com>
**Sent:** Tuesday, April 19, 2022 3:10 PM
**To:** Redacted                    @Allstate.com>
**Subject:** FW: Vaccine Exemption-Religious

Per our discussion,

KAREN L. LAWRENCE
Senior Managing Counsel | New York Metro Staff Counsel
Allstate Insurance Company

Law Offices of Karen L. Lawrence
1225 Franklin Avenue, Suite 100, Garden City, New York 11530
Main: Redacted    | Email: Redacted    @allstate.com

**PLAINTIFFS EXHIBIT   Q**

**From:** Redacted
**To:** Lawrence, Karen L.
**Cc:** Korn, Gary; Lyons, Jr., Malachy P.
**Subject:** RE: Vaccine Exemption-Religious
**Date:** Tuesday, April 19, 2022 3:23:12 PM
**Attachments:** image002.png
image003.png
image004.jpg
image005.jpg

Hi Karen,

Malachy's accommodation is weekly PCR testing and, for any instance in which you enter NYC for work purposes, you must be masked at all times when not eating or drinking. Any eating or drinking must occur at least six feet away from others.

Testing must be completed every week after 8:00 AM on Fridays and results must be submitted in the system by 8:00 AM on Mondays. The testing must be completed each week regardless of when you enter NYC for work purposes.

Please let me know if you have any questions, feel free to schedule a meeting if you would like to discuss further.

Thanks,

# Redacted

**HR-Workforce Relations Lead Consultant**
**Allstate Insurance Company**
**2775 Sanders Rd, STE A1W**
**Northbrook, IL 60062**
Redacted      *@allstate.com*



**From:** Lawrence, Karen L. <Karen.Lawrence@Allstate.com>
**Sent:** Tuesday, April 19, 2022 3:10 PM
**To:** Redacted                        @Allstate.com>
**Subject:** FW: Vaccine Exemption-Religious

Per our discussion.

**KAREN L. LAWRENCE**
Senior Managing Counsel | New York Metro Staff Counsel
**Allstate Insurance Company**

**Law Offices of Karen L. Lawrence**
1225 Franklin Avenue, Suite 100, Garden City, New York 11530
Main: Redacted    | Email: Redacted      *@allstate.com*

**PLAINTIFFS EXHIBIT   R**

To:
Redacted                                          April 20, 2022
Karen L. Lawrence
Gary Korn

Dear, Redacted , Karen and Gary,

After more than two years of fully performing the essential functions of my job as an Allstate attorney and Allstate Designated Home-Based worker, I have been required by Allstate HR to appear weekly at an undetermined medical provider location and submit to a personal and invasive medical procedure for an undetermined and indefinite period of time. This Allstate requirement is unlawful. This is supposedly for Allstate to be in compliance with the New York City Vaccine Mandate. A mandate that does not presently apply to me. By granting my reasonable accommodation request in the form of work scheduling assignments, the NYC Vaccine Mandate will never apply to me or Allstate.

I am most respectfully requesting a reasonable accommodation in the form of my work assignment schedule. Keeping the status quo is a very reasonable accommodation and will eliminate any need for any possible or future violation of the New York City Vaccine Mandate.

Allstate does not have to comply with a mandate that Allstate itself has complete control over. There is a very simple and reasonable solution that guarantees Allstate will never be in violation of the New York City Vaccine Mandate. And that is, please do not assign me to any in-person appearances in New York City. Problem solved.

This so-called Allstate HR accommodation that requires me to submit to weekly PCR Testing, is the wrong kind of accommodation. To require me to appear weekly before a medical provider for such invasive medical testing for an undetermined and indefinite period of time is unlawful. The NYC Vaccine Mandate does not apply to me. The Allstate PCR weekly testing requirement is unreasonable and abusive.

Again, more than two years ago, Allstate themselves, changed my official employment designation to "Home-Based Worker". I have been fully performing the essential functions of my job for more than two years as a Home-Based Worker. As of today, Allstate continues to have me perform the essential Functions of my job and still officially designates my employment designation as a Home-Based Worker. There has been absolutely no change to that designation in more than two years. During this time, I have never appeared for any in-person job assignment, anywhere. All my essential job requirements and assignments have been performed 100% remotely from home.

I am requesting a "Reasonable Accommodation" that is in fact, extremely reasonable. Reasonable accommodations in employment are clearly defined under New York Law as well as the 1973 Employee Rehabilitation Act and the Americans with disabilities Act. If Allstate takes an adverse employment action against me, that adverse action is akin to me having a disability. It is a medically related adverse employment action.

Allstate can simply maintain the status quo by not assigning me to any in person job assignments in NYC. There is absolutely no undue hardship to Allstate or the Law Offices of Karen L. Lawrence by doing so and granting my reasonable accommodation request. We have approximately 70

attorneys in our office and practically every day, we have more attorneys available than we have work assignments.

In our daily work assignment calendar, there are always attorneys assigned to an "In Day", meaning there was no assignment for that attorney.  Very few assignments, about 5% or less, are in person assignments in NYC.  As you know, an overwhelming majority of our assignments take place remotely in Nassau County and Suffolk County.  There are also remote assignments in NYC.

This Allstate HR requirement for me, a perfectly healthy individual, to appear at a medical provider facility and personally submit to an invasive medical procedure, on a weekly basis for an indefinite period of time is unlawful on its face.  Please think about the potential and possible negative impact to my well-being and over-all health.

I have never been exposed to Covid.  I have never displayed symptoms of Covid.  I have never been infected with Covid. I have never taken a Covid test because there was no reason, no symptoms or complaints.   Will I be able to say the same after PCR testing, weekly visits for an undetermined and indefinite period of time to a medical care provider?

We are Attorneys and reasonableness is the cornerstone of our profession.  We are guided by the reasonableness of each and every situation.  This Allstate PCR weekly testing requirement is blatantly flawed and unreasonable.

As we know, Covid is transmitted in the air.  There are sick people, some already infected with Covid, that appear every day at these medical provider facilities.  They sit around for hours at a time, in waiting rooms and examining rooms.  It defies logic that Allstate HR is requiring me to leave my home, a perfectly clean environment, and have me appear, at my peril, on a weekly basis, for an indefinite period of time, where I could possibly be infected with Covid, a possible death sentence and for no reason that applies to me.   Does that sound lawful and reasonable?

What happens if the instrument that the health care provider inserts up my nostril is contaminated and causes an infection in my body?  But for this unreasonable and unlawful Allstate PCR requirement this would not have happened.  Is this but for, Allstate liability? Is this a possible personal injury liability lawsuit against Allstate?   Granting my very practical and reasonable accommodation request would certainly prevent that scenario.

What if the health care provider, on one of the many invasive procedures, inserts the medical device too far up my nostril and causes irreparable long-term injury and damage to my nostril, sinuses, brain or other organ?

In addition to my JD, I spent two extra years in law school where I received my Masters in Laws in Employment Discrimination and Labor Law.  I must admit that in all those employment discrimination and labor law classes, and in all the cases I studied, there was never such a ridiculous, unnecessary, unwarranted, unlawful and abusive Allstate employer requirement. This Allstate requirement that requires me to subject myself to possible injury or death by subjecting myself to PCR Weekly Testing by invasive medical procedures for an indefinite, period of time, is so flawed and wrong.

Are all Allstate employees in New York State, and in all Allstate employment bands, subject to this requirement? I live in Suffolk County, New York. I have absolutely no connection with New York City.

Again, please simply keep the status quo. There is no possible way it will cause an undue burden on Allstate or the Law Offices of Karen L. Lawrence. I hereby, officially request that Allstate and the Law Offices of Karen L. Lawrence, provide me with a reasonable accommodation in the form of daily calendar assignments that keep the status quo as it pertains to me. Naturally, it would be reasonable to assign me to in-person assignments in Nassau County and Suffolk County and it would be reasonable to assign me to cover remote assignments anywhere.

It would be most unreasonable and in fact, spiteful and possibly malice for any Allstate employee to deliberately violate the New York City Mandate and assign me to an in-person assignment in New York City, when Allstate could have acted with reason and granted my reasonable accommodation request.

If my reasonable accommodation request for maintaining the status quo is denied, please give me an opportunity to seek another position in Allstate.

Sincerely,

Malachy Lyons, Jr., Esq.

**PLAINTIFFS EXHIBIT   S**

## Chapter 12 - Employee Relations



| Print | Back | Close |

### Purpose

Provides policy guide information on various employee relations topics. Click a link listed below to jump to the related policy:

- Non-Retaliation

# Redacted

- Civil Rights Violations

# Redacted

- Procedure for Reporting an Allstate i-Report Line concern

### Policy

**Allstate prohibits any type of harassment, discrimination or retaliation by any type of workforce individual; including but not limited to employee, vendor, intern, volunteer or contingent worker.**

### Non-Retaliation

Allstate values working directly with employees toward the resolution of workplace concerns. Allstate prohibits any workforce individual from retaliating against an employee for bringing forward, in a constructive manner, a concern.

The Allstate i-Report Line Process is Allstate's commitment to a fair, prompt, safe and confidential resolution of work-related concerns. The Allstate i-Report Line should be used to report ethical, legal, regulatory or compliance concerns regarding Allstate and its employees, agents, vendors, clients and customers. (For example: theft, fraud, sexual harassment, failure to comply with federal financial regulations or the transmission of private consumer or employee information.)

It is a structured process to resolve a variety of work-related concerns - to those involving an employee's legally-protected rights.

No retaliatory action will be taken against an employee who exercises his/her legal rights against Allstate.

Back to Top

# Redacted

**PLAINTIFFS EXHIBIT   T**

## Anonymity and Confidentiality

The Company will always strive to address concerns fairly and discreetly. Employees with concerns are strongly encouraged to identify themselves when seeking assistance. This is the best way to ensure that a thorough and complete investigation can be made and that an effective and lasting resolution can be reached.

However, we recognize that in some cases people may prefer to remain anonymous when raising concerns. Anonymous reports can be made through the Speak Up Process. An investigation will be conducted using the facts provided, while working to maintain your anonymity as far as permitted by law. When necessary, the Company may also consult with you confidentially if anonymity would hinder the investigation or resolution of the issue.

## Zero Tolerance for Retaliation

We do not tolerate intimidation or retaliation against anyone who raises a concern, makes a report or cooperates in an investigation.

Retaliation is not just malicious and contrary to our core values—it also undermines the culture of openness and trust we are determined to maintain. Any threat of retaliation can hinder investigations and prevent people from coming forward with concerns. Retaliation can take many forms and is sometimes subtle. It can also occur inside or outside of the work-

place. In many instances, it is also illegal. Each of us has a role to play in making retaliation unacceptable and maintaining an environment in which we can all feel safe and comfortable raising an issue or reporting a violation.

We recognize speaking up isn't always easy, and we want to make the decision to speak up as simple as possible. Retaliation against anyone who raises a concern or reports a violation in good faith may result in disciplinary action, up to and including termination of employment.

## Investigations

We are committed to thoroughly investigating all reports of violations and reaching fair resolutions. We will try to maintain the confidentiality of those involved, where this is allowed by law and does not hinder the investigation or resolution of the issue. Most investigations are handled internally, but, in rare cases, they may be referred to an outside agency.

Reports about a possible violation of the law or any questions about accounting, auditing, disclosure or other financial or reporting practices will be referred to the General Counsel for investigation. The General Counsel may refer these matters to the Audit Committee.

## Fair Process and Disciplinary Action

When possible and where required, all parties involved in an investigation will get a fair chance to explain circumstances and present their side of the

story. We make efforts to complete the process promptly, while still taking whatever time is needed to conduct a proper and thorough investigation.

Violations of the Code or the law, or retaliation by anyone against an employee for reporting a concern in good faith or cooperating with an investigation, may result in discipline, up to and including termination of employment.



Lyons.

**PLAINTIFFS EXHIBIT   U**

# Redacted

### Civil Rights Violations

It is the Company's policy to maintain a working environment free from discrimination and harassment. Therefore, any conduct that is discriminatory in nature; motivated by ancestry, age, color, disability, genetic information, gender, gender identity, gender expression, marital status, medical condition, military or veteran status, national origin, race, religion (including religious dress), sex or sexual orientation; and adversely affects an employee's terms or conditions of employment is prohibited. This applies to all areas of employment including: hiring, training, salary administration, promotion, job assignment, benefits, discipline, and termination.

To report an incident, you may speak to your Manager. If this is not an option, you may contact someone in the Human Resource Department.

If you would like to report the incident anonymously, you can call the Allstate i-Report Line.

Line management must report all incidents to the Human Resource Department.

Back to Top

# Redacted

**PLAINTIFFS EXHIBIT  V**

10

## Ethical Decision-Making

When faced with ethical issues where the right decision or course of action is unclear, we should first ask ourselves:

- Is it legal?
- Does it follow the spirit and intention of applicable laws and regulations?
- Is it the right thing to do?
- Does it conflict with our core values?
- Is it consistent with our Code and company policies?
- Could it adversely affect our Company or its stakeholders?
- What are the consequences?
- How would it be perceived by our family and friends?
- Would we feel comfortable if our actions appeared in the news or social media?

If uncomfortable with or unsure of the answer to any of these questions, we must seek help before proceeding.

## Speaking Up, Seeking Help and Resolving Concerns

We can rely on our honesty, caring and integrity to guide us, but when we are not sure how to proceed, we also have a duty to step forward, ask questions and seek help. And if we believe a violation of our policies, our Code or the law has happened or may be about to happen, we are obligated to report it.

To seek help, report violations and resolve concerns, you can follow the Speak Up Process by:

- Contacting your manager
- Contacting any manager
- Contacting Human Resources
- Emailing your local Compliance mailbox
- Using the additional local reporting options as listed on the right

Often it is best to start with your manager when raising a concern, but sometimes this may not be feasible. The most important thing is that you lead the way speak up and seek help when something doesn't feel right.



## speak up process

The Speak Up Process is an important resource for providing fair, prompt and safe resolutions of concerns. It should be used to report legal, ethical, regulatory or compliance concerns regarding employees, agents, vendors, clients and customers of the Allstate Family of Companies. You can follow the Speak Up Process 24/7 in the following ways:

- **Answer Financial, Esurance and Allstate U.S.** Call (800) 706-9855 or access the website at https://allstate-report.alertline.com
- **Allstate Canada.** Call the ClearView Connects hotline at (866) 275-2138, access the website at www.clearviewconnects.com or send a report by mail to the ClearView Connects, post office box at P.O. Box 11017, Toronto, Ontario M1E 1N0
- **Allstate Northern Ireland.** Call the ANI I-Report line at (0800) 169-3658 or send an email to ANICompliance@allstate.com
- **ASPL.** Call the ASPL I-Report line at (000-117) 855-645-5594 or access the website at aspl.ethicspoint.com

You may remain anonymous during this process.

**PLAINTIFFS EXHIBIT   W**

# Redacted

## Procedure for reporting an Allstate i-Report Line concern

The Allstate i-Report Line process should be used to report ethical, legal, regulatory or compliance concerns regarding Allstate and its employees, agents, vendors, clients, interns, volunteers and customers. (For example: theft, fraud, sexual harassment, failure to comply with federal financial regulations or the transmission of private consumer or employee information.)

**Step 1**: Determine if concern should be filed via the Allstate i-Report Line Process

Most workplace concerns are resolved through open and honest discussions with management or your Local Human Resource Representative (Open Door Process).

**Step 2**: File an Allstate i-Report Line concern

There are three ways you can go about filing an Allstate i-Report Line concern:

- Contacting Human Resources to file your concern
- Calling the Allstate i-Report Line
- Accessing the Allstate i-Report Web site

**Step 3**: Local Investigation involving LHR and Local Management

**Step 4**: An Appeal

If the employee is not satisfied with the findings of the Local Management and Local Human Resources, he/she may request an Appeal. A team will review the local decision to ensure that it is consistent with Allstate's practices and procedures.

Back to Top

**PLAINTIFFS EXHIBIT X**



# NYC Mayor Eric Adams Not Enforcing COVID Vax Mandate, Won't Repeal It

Posted by **Contributing Author**  June 23, 2022



*Eric Adams / PHOTO: AP*

(Headline USA) New York City Democrat Mayor Eric Adams has quietly stopped enforcing the city's COVID-19 vaccine mandate for private businesses, but refuses to repeal the mandate.

Adams's administration inherited the vaccine mandate from former Mayor Bill de Blasio, and declined to strike it down despite repeated requests from private business owners. However, Adams has not been fining private businesses that don't comply with the mandate, according to the *New York Times*.

"We have been focused on prioritizing education instead of enforcement when it comes to the private sector mandate, which is how we've been able to get more than 87 percent of all New Yorkers with their first dose to date," Adams's spokesman Fabien Levy said in a statement.

Under the vaccine mandate, businesses that refuse to comply and force their employees to get the jab could face $1,000 fines.

Adams admitted in February that the mandate was ineffective, but said he didn't want to repeal it because doing so would send a "mixed message."

"The rule was put in place; to start changing it now would send mixed messages," he said at the time.

He did, however, change the mandate to hypocritically exempt high-profile athletes and performers.

"Being healthy is not just about being physically healthy, but being economically healthy," he said after announcing the exemption.

Adams prefaced his announcement by saying: "I'm going to make some tough choices. People are not going to agree with some of them. I must move this city forward.

"Generals lead from the front. I was not elected to be fearful, but to be fearless," he said.



5/7/24, 9:43 AM                                (22,811 unread) - splinterwone@aol.com - AOL Mail



Jun 23, 2022

# Adams Hasn't Been Enforcing NYC's Private-Sector Vaccine Mandate

Maria Rose Sheinerman, Bloomberg News



Brooklyn Borough President and New York City mayoral nominee Eric Adams. , Photographer: Chip Somodevilla/Getty Images North America

(Bloomberg) -- New York City hasn't been enforcing the rule mandating that private businesses require employees to be vaccinated against Covid-19, and a spokesman for Mayor Eric Adams said the administration has no plans to start doing so.

Newsday reported on Wednesday that the city hasn't been inspecting businesses to check for compliance since Adams took office in January. The rule, one of the strictest in the US, was implemented during the final month of the administration of former Mayor Bill de Blasio. Businesses said the mandate would be difficult to enforce and could lead to worker shortages.

"We have been focused on prioritizing education instead of enforcement when it comes to the private sector mandate, which is how we've been able to get more than 87% of all New Yorkers with their first dose to date," Fabien Levy, a spokesman for Adams, said in an email on Thursday.

The rule went into effect on Dec. 27. At the time, city data showed only 31% of 3,025 businesses inspected were complying with the order, Levy told Newsday. The requirement applies to the roughly 184,000 businesses with operations in the city. With the rule still on the books, New York City is the only jurisdiction in the US with an active vaccination mandate for private employers.

De Blasio had said businesses would face fines of up to $1,000 if found in violation of the mandate. Adams said in late December that he had no plans to reverse the de Blasio rule but that his approach would be "cooperative, not punitive."

The lax enforcement of the private-sector mandate stands in contrast to Adams's approach in the public sector, where some employees, including police officers, teachers and sanitation workers, have been fired for failure to comply with the vaccination requirement.

According to the New York Times's Covid-19 vaccine tracker, 91% of New Yorkers have gotten at least one dose and 78% are fully vaccinated against the virus.

## Latest Videos



### AI generated outfits helping retailers boost revenue: FindMine CEO

Add to Playlist

Prefer TSX energy plays over utilities this earnings season: portfolio manager



Energy has been particularly impacted by Canadian government policies: strategist



BNN Bloomberg's closing market update: May 6, 2024



| | S&P/TSX (/markets/tsx) | Dow Jones (/markets/dow) | S&P 500 (/markets/sp500) | Nasdaq (/markets/nasdaq) | COMMODITIES | Gold |
|---|---|---|---|---|---|---|
| Markets (/markets) | 312.06 | 176.59 | 52.95 | 192.92 | | 2,3 |
| | 22,259.47 | 38,852.27 | 5,180.74 | 16,349.25 | | |

BN:CT   $59.95   +0.25 (/stock/BN:CT)   BNS:CT   $64.95   +0.13 (/stock/BNS:CT)   CAE:CT   $28.27   -0.01 (/stock/CAE:CT)