UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

MALACHY P. LYONS, Jr.,

               Plaintiff,                    Case No. 2:24-cv-03370 *JMA ARL*

        v.                      **PLAINTIFFS OPPOSITION TO DEFENDANTS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

ALLSTATE INSURANCE COMPANY,

               DEFENDANT.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC - 2 2024 ★

LONG ISLAND OFFICE

STATE OF NEW YORK

              ss.

COUNTY OF SUFFOLK

Malachy P. Lyons, Jr., affirms the following under penalty of perjury; deposes and says:

1. I am the Plaintiff Pro se in this action, herein after "Plaintiff."

2. Plaintiff respectfully submit this affirmation in opposition to Allstate's motion to compel arbitration dated October 16, 2024.

3. Plaintiff has personal knowledge of facts which bear on this motion.

4. Plaintiff submits that Allstate's motion must be denied because Allstate has failed to prove that Plaintiff clearly, explicitly and unequivocally entered into Allstate's alleged arbitration contract.

5. The Plaintiff submits that this Court, in the interest of justice, should declare Allstate's alleged arbitration contract null and void in its entirety as to Plaintiff and all of Allstate's

REC'D IN PRO SE OFFICE
DEC 2 '24 PM2:59

RECEIVED
DEC - 2 2024
EDNY PRO SE OFFICE

more than 30,000 employees because Allstate cannot prove by a preponderance of the evidence that Plaintiff and all of its employees had clear, explicit and unequivocal notice of its alleged arbitration contract.

## ALLSTATE'S MOTION TO COMPEL ARBITRATION

6. Allstate alleges that plaintiff agreed to arbitrate any and all claims against Allstate that could be brought in a court including without limitation all claims arising directly or indirectly from his employment or termination. See Allstate motion page 1.

7. In opposition, Plaintiff submits that he never agreed to Allstate's alleged arbitration contract because Allstate never clearly, explicitly and unequivocally provided him with notice of its alleged arbitration contract and of all the alleged terms and conditions therein.

8. Plaintiff submits that Allstate has failed to prove by a preponderance of the evidence that it clearly, explicitly and unequivocally provided Plaintiff with a copy of its alleged contract and all the terms and conditions alleged therein.

9. Allstate alleges that by filing this Complaint and asserting statutory and common law claims, Plaintiff has violated his agreement to arbitrate. See Allstate motion page 1.

10. In opposition, Plaintiff submits that he never agreed to Allstate's alleged arbitration contract, and therefore he never violated Allstate's alleged and nonexistent arbitration contract.

11. In opposition, Plaintiff submits that Allstate has failed to prove by a preponderance of the evidence that Plaintiff clearly, explicitly and unequivocally violated its alleged and nonexistent arbitration contract.

12. Allstate alleges that it provided Plaintiff with notice and copies of its mutual arbitration agreement simply by sending a one-time, single, solitary, mass email, simultaneously to Plaintiff and every one of its more than 30,000 employees on October 21, 2019. See Allstate motion page 3.

13. In opposition, Plaintiff submits that Allstate has failed to prove by a preponderance of the evidence, that it clearly, explicitly and unequivocally provided Plaintiff with notice of its alleged arbitration contract or with copies of its alleged arbitration contract and of the terms and conditions alleged therein.

14. Allstate alleges that Plaintiff had 60 days to review and sign its alleged contract, but that if he took no action (such as signing the form or resigning from Allstate) his continued employment after December 2, 2019, would "signify acceptance" of its contract. See Allstate motion page 3.

15. In opposition, Plaintiff submits that by Allstate admitting that it told Plaintiff to sign its alleged arbitration contract or resign from his attorney position, Allstate attempted to implement and enforce upon Plaintiff an unenforceable and invalid Allstate contract of adhesion.

16. In opposition, Plaintiff submits that he never "signified acceptance" of Allstate's alleged arbitration contract and never, in any way, agreed to Allstate's alleged arbitration contract.

17. In opposition, Plaintiff submits that Allstate has failed to prove by a preponderance of the evidence that Plaintiff clearly, explicitly and unequivocally "signified Acceptance" of its alleged contract.

3

18. **Allstate submits that Plaintiff had 60 days to either accept its alleged arbitration agreement or resign from Allstate.  See Allstate motion page 3.**

19. In opposition, Plaintiff submits that Allstate has attempted to implement a contract of adhesion allegedly upon Plaintiff and all of its more than 30,000 employees.

20. A contract of adhesion exists when the contract contains terms that are unfair, nonnegotiable, and the contract arises from a disparity of bargaining power or oppressive tactics.  See *Molino v Sagamore* (105 AD3d 922, 923 [2d Dept 2013]).

21. In opposition, Plaintiff submits that Allstate's alleged implementation of its alleged contract terms was unfair, nonnegotiable, arose from Allstate's disparity in bargaining power, and Allstate used oppressive tactics by allegedly requiring Plaintiff and all of its more than 30,000 employees, to either enter into Allstate's alleged arbitration contract and accept its alleged contract terms and conditions, or resign from their jobs, medical, and life insurance benefits, and relinquish their pensions and 401K benefits with Allstate.

22. In opposition, Plaintiff submits that Allstate's alleged arbitration contract was unconscionable because it allegedly required Plaintiff to either agree to Allstate's alleged arbitration contract and all its alleged terms and conditions

or resign from his employment with Allstate and lose his pension, medical, life insurance, and 401K benefits.

23. Allstate alleges that Plaintiff by continuing his employment entered into Allstate's alleged binding contract to arbitrate any and all of his employment-related claims.

24. In opposition, Plaintiff submits that he never agreed to enter into Allstate's alleged arbitration contract simply by continuing his employment with Allstate.

25. In opposition, Plaintiff submits that Allstate has failed to prove by a preponderance of the evidence that it clearly, explicitly and unequivocally provided Plaintiff with notice of its alleged continuing employment provision and that Allstate never clearly, explicitly and unequivocally provided Plaintiff with a copy of its alleged contract, its continued employment provision, and the terms and conditions alleged therein.

26. In opposition, Plaintiff submits that Allstate's argument that its one-time, single, solitary, mass email created a legally enforceable arbitration contract upon Plaintiff and all it more than 30,000 employees is fatally flawed because Allstate, in its alleged implementation of its alleged arbitration contract, failed to clearly, explicitly and unequivocally, ascertain and establish, whether Plaintiff or any of its more than 30,000 employees were absent from work on long term maternity leave for an extended period of time and therefore could not have received clear, explicit and unequivocal notice of Allstate's alleged one-time mass email arbitration contract.

27. In opposition, Plaintiff submits that Allstate's alleged arbitration contract is fatally flawed in its alleged implementation because Allstate failed to clearly, explicitly and unequivocally, ascertain and establish whether Plaintiff or any of its more than 30,000

employees were absent from work, due to illness or injury and on extended long-term sick leave and could not have received clear, explicit and unequivocal notice of Allstate's alleged one-time mass email arbitration contract.

28. In opposition, Plaintiff submits that Allstate's alleged arbitration contract is in its alleged implementation is fatally flawed because Allstate failed to clearly, explicitly and unequivocally, ascertain and establish whether Plaintiff or any of its more than 30,000 employees were absent from work on long term extended leave due to the Family Medical Leave Act and could not have received clear, explicit and unequivocal notice of Allstate's alleged one-time mass email arbitration contract.

29. In opposition, Plaintiff submits that Allstate's alleged arbitration contract is fatally flawed in its alleged implementation because Allstate failed to clearly, explicitly and unequivocally, ascertain and establish whether Plaintiff or any of Allstate's more than 30,000 employees were absent from work and on long term extended vacation or out of the United States and could not have received clear, explicit and unequivocal notice of Allstate's alleged single solitary mass email arbitration contract.

30. Allstate in its Exhibit "A" declaration of employee Mary Anne Empleo, submits a copy of some alleged arbitration document that Allstate allegedly emailed to Plaintiff on October 21, 2019.

31. In opposition, Plaintiff submits that Allstate's Exhibit "A" alleged document is nothing more than a generic copy of some alleged document that is not clearly, explicitly and unequivocally addressed to Plaintiff.

32. Allstate alleges that if Plaintiff took no action (such as signing the alleged form or resigning from Allstate) his continued employment after December 2, 2019, would "signify acceptance" of its contract.

33. In opposition, Plaintiff submits that he did not receive clear, explicit and unequivocal notice of Allstate's alleged take it or leave it contract of adhesion, and he never "signified acceptance" of the alleged contract, and that Allstate's use of the term "signified acceptance" fails the legal test for what constitutes a legally valid and enforceable contract.

34. In opposition, Plaintiff submits that the legal standard is not "signified acceptance," the legal test is whether Allstate provided Plaintiff with clear, explicit and unequivocal notice of its alleged contract and whether there was a clear, explicit and unequivocal "meeting of the minds" in the notice, and in the terms and the conditions of Allstate's alleged contract.

35. In opposition, Plaintiff submits that Allstate's alleged email of its alleged contract on October 21, 2019, was deliberately designed by Allstate to not provide Plaintiff and its more than 30,000 employees with clear, explicit and unequivocal, notice of the consequences of accepting its alleged contract.

36. In opposition, Plaintiff submits that Allstate unreasonably and wrongfully alleges that its alleged contract was legally created and is binding simply as a result of Allstate sending a single, one-time, solitary, mass email, without any subsequent email literature, hard copy literature, follow-up emails, or

further communication of any kind, to Plaintiff or any of its more than 30,000 employees.

37. In opposition, Plaintiff submits that he never clearly, explicitly and unequivocally, entered into Allstate's alleged contract and that he never clearly, explicitly and unequivocally agreed that his right to a trial by jury was being waived

38. Allstate alleges that Plaintiff by choosing not to return a signed copy of its alleged contract but continuing to work at Allstate beyond December 2, 2019, "indicated his consent" to Allstate's Agreement.

39. In opposition, Plaintiff submits that the test for a legally valid and enforceable contract is not as Allstate alleges, "indicated consent" but the legal test is whether Allstate gave Plaintiff clear, explicit and unequivocal notice of Allstate's alleged arbitration contract and clear, explicit and unequivocal, notice of all the terms and conditions set forth therein, and whether Plaintiff clearly, explicitly and unequivocally consented to the alleged Allstate arbitration contract.

40. Allstate in its Statement of Facts alleges that its HR Workforce Digital Solutions Team reviewed its records to determine if Plaintiff had returned a copy of the alleged contract and that according to those records, Allstate determined that Plaintiff never returned a signed copy of the alleged Allstate arbitration contract. See Allstate motion page 4.

41. Allstate alleges that it made an "Offer" to arbitrate to Plaintiff when on October 21, 2019, it sent a single, solitary, one-time, mass email, simultaneously to Plaintiff and all of its more than 30,000 employees.

42. In opposition, Plaintiff submits that he never received clear, explicit and unequivocal notice of Allstate's alleged contract, or Allstate's alleged "offer to arbitrate" and he never clearly, explicitly and unequivocally engaged in a manifestation of his willingness to enter into Allstate's alleged arbitration contract.

43. Allstate alleges that it made an "offer" to arbitrate to Plaintiff in Allstate's alleged documentation allegedly provided to Plaintiff.

44. In opposition, Plaintiff submits that he never received clear, explicit and unequivocal notice of Allstate's alleged contract, or of Allstate's alleged "offer to arbitrate" in any alleged Allstate documentation allegedly provided to him by Allstate.

45. Allstate submits that "An offer is the manifestation of willingness to enter into a bargain," and that Allstate allegedly communicated its alleged offer to arbitrate to Plaintiff when Plaintiff allegedly received a copy of Allstate's alleged contract on October 21, 2019, along with Allstate's alleged instructions to complete Allstate's alleged arbitration contract within 60 days. See Allstate motion page 8.

46. In opposition, Plaintiff submits that he never received clear, explicit and unequivocal notice of Allstate's alleged arbitration contract, and never received Allstate's alleged "offer to arbitrate" in any alleged Allstate documentation or alleged instructions allegedly provided to him by Allstate.

47. Allstate submits that "An offer is the manifestation of willingness to enter into a bargain," and that Allstate allegedly communicated its alleged offer to arbitrate to Plaintiff when Plaintiff allegedly received a copy of Allstate's alleged contract on October 21, 2019,

48. In opposition, Plaintiff submits that he never received clear, explicit and unequivocal notice of Allstate's alleged contract, or Allstate's alleged "offer to arbitrate" and he never clearly, explicitly and unequivocally engaged in any manifestation of his willingness to enter into Allstate's alleged arbitration contract.

49. Allstate in its legal argument alleges that there was ample "consideration" to support its alleged contract by Plaintiffs continued employment after Plaintiff allegedly received notice of Allstate's alleged contract.  See Allstate motion page 10.

50. In opposition, the Plaintiff submits that he never clearly, explicitly and unequivocally received notice of Allstate's alleged contract and that there was no clear, explicit and unequivocal bargained for "consideration" to form Allstate's alleged contract.

51. In opposition, Plaintiff submits that Allstate has failed to prove by a preponderance of the evidence that it clearly, explicitly and unequivocally presented Plaintiff with its alleged "offer" to arbitrate, or that Plaintiff "accepted" Allstate's alleged offer, or that there was a clear, explicit and unequivocal, "meeting of the minds" to legally form Allstate's alleged arbitration contract.

**ALLSTATE'S DECLARATION OF ITS ATTORNEY LINDA WONG EXHIBIT A**

52. Allstate in support of its motion to compel arbitration submits into evidence the declaration of its attorney Linda Wong, as Allstate's Exhibit "A" ***Brown v. Coca-Cola***

*Enters., Inc., No. 08-3231, 2009 U.S. Dist. LEXIS 35798 (E.D.N.Y. April 28, 2009).* In that case the Coca-Cola Company, in the implementation of its employee arbitration contract, acted in good faith and in an open, sincere and fully transparent manner to ensure that its employees had clear, explicit and unequivocal notice of the proposed arbitration contract and a full understanding of all the terms and conditions set forth in its arbitration contract.

53.  In opposition Plaintiff submits that Allstate did not act in a good faith, sincere, and transparent manner, and instead, allegedly sent one single solitary mass email on October 21, 2019, to Plaintiff without any subsequent follow up literature, hard copy information, further email information, or any follow-up communication whatsoever, and that Allstate by sending a single solitary email without more, attempted to implement its alleged contract upon Plaintiff in a bad faith and non-transparent, and inconspicuous manner, by basically slipping the alleged notice of the contract through the back door and under the rug.

54.  In Allstate's Exhibit "A" the Court in *Brown* held that the Coca-Cola Company, in advance of the implementation of its proposed arbitration agreement contract, mailed hard copy announcement letters to its employees whereby its proposed arbitration agreement was clearly, explicitly and unequivocally announced in letter form, to the employees at their home addresses provided to the Company, and that the company letter informed the Coca-Cola Company employees of the effective date of the proposed arbitration and the fact that the Company and its employees would agree to

resolve all legal claims and other workplace conflicts through arbitration rather than through court.

55.  In opposition Plaintiff submits that this Court does not have that good faith and transparent fact pattern here in Allstate's motion to compel arbitration.  Allstate never mailed a hard copy announcement letter to Plaintiff and Allstate's alleged contract was not clearly, explicitly and unequivocally, announced in letter form to the Plaintiff at his home addresses provided to Allstate.

56.  In Allstate's Exhibit "A" the Court in *Brown* held that the Coca-Cola Company in addition to the mailing of its letter also physically mailed a hard copy of its Company Brochure to its employee's, wherein, the "Company Brochure" informed the Coca-Cola employees that disputes will be finally solved in Arbitration rather than in court.

57.  In opposition Plaintiff submits that this Court does not have that good faith and transparent fact pattern here in Allstate's motion to compel arbitration.  Allstate never mailed a hard copy of an Allstate Company Brochure to Plaintiff and Allstate's alleged contract was not clearly explicitly and unequivocally announced and conditionally described to the Plaintiff.

58.  In Allstate Exhibit "A' the Court in *Brown* held that the Coca-Cola Company in addition to the mailing of its company letter and the mailing of its Company Brochure, physically mailed a hard copy of its 'Summary Arbitration Description" to its employee's, wherein, the "Summary Arbitration Description" informed the Coca-Cola employees that disputes will be finally solved in Arbitration rather than in court.

59.   In opposition Plaintiff submits that this Court does not have that good faith and transparent fact pattern here in Allstate's motion to compel arbitration.  Allstate never mailed a hard copy "Summary Arbitration Description" to Plaintiff and Allstate's alleged contract was not clearly, explicitly and unequivocally, announced and conditionally described to Plaintiff.

60.   In Allstate's Exhibit "A" the Court in Brown held that in addition to the Coca-Cola Company employee hard copy "Mailed Letter" the hard copy mailed "Company Brochure" and the hard copy mailed  "Summary Arbitration Description" the Coca-Cola Company conducted an "In-Person Arbitration Orientation Program", wherein each attending employee received a copy of the "Arbitration Document", plus the "Arbitration Frequently Asked Questions Document" and the "Power Point Presentation" shown at the orientation program, plus a "Sign-In Sheet" for all employees who attended the orientation program.

61.   In opposition, Plaintiff submits that this Court does not have before it that good faith, open, and transparent fact pattern in Allstate's motion to compel arbitration, and that Allstate never conducted an "In-Person Arbitration Orientation Program", and the Plaintiff never received a hard copy of the alleged "Arbitration Document", Plaintiff never received a hard copy of the alleged "Arbitration Frequently Asked Questions Document" and Plaintiff never received a hard copy of any "Power Point Presentation".

## DECLARATION OF ALLSTATE ATTORNEY LINDA WONG EXHIBIT "B"

62.   Allstate in support of its motion to compel arbitration submits the declaration of its attorney Linda Wong, as its Exhibit "B", the case of *Chanchani v Salomon/Smith*

*Barney, Inc., 2001 U.S. Dist. LEXIS2036.* In that case, Smith Barney distributed to its employees an "Employee Handbook" containing the "Company's Dispute Resolution Policy", which made arbitration the exclusive forum for claims against the Company. The Employee Handbook was "Updated Regularly", and the employee "signed" the Employee Handbook and agreed to the arbitration terms contained in the Employee Handbook.

63. In opposition, Plaintiff submits that this Court does not have before it that good faith, open and transparent fact pattern in Allstate's Exhibit "B" in Allstate's motion to compel arbitration, and that Allstate never composed an Allstate Company Employee Handbook describing the alleged Employee Arbitration Contract, and never provided Plaintiff with a hard copy of any Company Employee Handbook or hard literature describing Allstate's alleged employee mutual arbitration agreement contract.

## DECLARATION OF ALLSTATE ATTORNEY LINDA WONG EXHIBIT "C"

64. Allstate in support of its motion to compel arbitration, submits the declaration of its attorney Linda Wong as Allstate Exhibit "C", the case, of *Gonzalez v Toscorp INC., 1999 U.S. Dist. LEXIS 12109*; *1999 WL 595632.* In that case the Toscorp Company adopted an "Alternative Dispute Policy" by which all its employees and Toscorp were bound to arbitrate all employment disputes. The Toscorp Company distributed a complete hard copy of its Policy to all employees along with a hard copy of the "Toscorp Team Member Handbook". In addition, a hard copy "Acknowledgement of Receipt", requiring the "signature" of each employee accompanied each hard copy document.

14

Toscorp provided its employees with "Hard Copies of Toscorp's Alternative Dispute Policy" and the "Toscorp Team Member Handbook" explaining the Alternative Dispute Policy.

65. In opposition, Plaintiff submits that this Court does not have before it that good faith, open and transparent fact pattern in Allstate's Exhibit "C" and Allstate never composed a Company Employee Handbook, never composed a Team Member Handbook, and never composed or distributed any hard copy literature to Plaintiff to explain its alleged contract.

## DECLARATION OF ALLSTATE ATTORNEY LINDA WONG EXHIBIT D

66. Allstate in support of its motion to compel arbitration submits the declaration of its attorney Linda Wong, as its Exhibit "D", the case of *Hamerslough v. Hipple, 2010 U.S. Dist LEXIS 119694\*; 2010 WL 4537020.*   In that case, the employee "when hired" as a "condition of employment" was covered by an "Employment Agreement that clearly included a Mandatory Arbitration Clause." The clause was under the heading "Dispute Resolution".

67. In opposition, Plaintiff submits that this Court does not have that fact pattern here in Allstate's motion to compel arbitration, and Plaintiff was never governed when hired, or at any time thereafter, by any Allstate employment agreement that included a mandatory arbitration clause or any Allstate agreement under the heading of dispute resolution.

**DECLARATION OF ALLSTATE ATTORNEY LINDA WONG EXHIBIT "E"**

68. Allstate in support of its motion to compel arbitration submits the declaration of its attorney Linda Wong, as its Exhibit "E", the case of ***Johnson v Tishman Speyer Props., L.P., 2009 U.S. Dist. LEXIS 96464\*; 2009 WL 3364038.***

69. In opposition, Plaintiff submits that this Allstate Exhibit "E" is not applicable to this motion to compel arbitration, because that case involves a union employee that was clearly governed by a collective bargaining agreement that compelled arbitration in all employee disputes.  Plaintiff submits that Allstate's Exhibit "E" is irrelevant and Allstate's reliance on this exhibit is misplaced.

**DECLARATION OF ALLSTATE ATTORNEY LINDA WONG EXHIBIT "F"**

70.  Allstate in support of its motion to compel arbitration submits the declaration of its attorney Linda Wong, as its Exhibit "F", the case of **Molina v *Coca-Cola Enters., 2009 U.S. Dist. LEXIS 47828 \*; 2009 WL 1606433.***  The Court in *Molina* held that the employee in that action entered into a "binding arbitration agreement" with the Coca-Cola Company, when he was "Initially Employed" whereby he "agreed" to litigate all employment disputes through binding arbitration.

71.  In opposition, Plaintiff submits that he never entered into a "binding arbitration agreement" with Allstate when he was "initially Employed" or at any time thereafter, and Plaintiff never "agreed" to litigate all employment disputes through binding arbitration.

72.  The Molina Court held that a hard copy letter was mailed to the Coca-Cola Company employees to their home address noticing them of the agreement to resolve all legal claims through arbitration rather than the courts.

73.  In opposition, Plaintiff submits that Allstate never mailed him a hard copy letter to his home address or anywhere else noticing of its alleged agreement to resolve all legal claims through arbitration rather than the courts.

74.  The Molina Court held that the Coca-Cola Company, mailed a hard copy "Arbitration Program Brochure" to its employees at their home addresses.

75.  In opposition, Plaintiff submits that Allstate never mailed a hard copy or any other form of notice containing an "arbitration Program Brochure" to Plaintiff.

76.  In opposition, Plaintiff submits that this Court does not have before it that good faith, open and transparent fact pattern displayed in Allstate's Exhibit "F" in Allstate's motion to compel arbitration.

77.  In Allstate's Exhibit "F" the Molina Court held that the Coca-Cola Company mailed a hard copy of its "Summary Program Description" to its employees informing them that if an employee files a lawsuit against the Coca-Cola Company, the Company will ask the court to dismiss the lawsuit and refer it to arbitration.

78.  In opposition, Plaintiff submits that this Court does not have before it that good faith, open and transparent fact pattern displayed in Allstate's Exhibit "F" here in Allstate's motion to compel arbitration because Allstate never mailed a hard copy of its "Summary Program Description" to Plaintiff and did not provide Plaintiff with any other

information noticing Plaintiff that if he filed a lawsuit against Allstate, Allstate would ask the court to dismiss the lawsuit and refer it to arbitration.

79.  In Allstate's Exhibit "F" the Molina Court held that the Coca-Cola Company conducted an "In-Person" "Arbitration Orientation Program", in which the employee attended the session and signed his name next to his printed name on the "Sign-In Sheet" for the arbitration orientation program.

80.  In opposition, Plaintiff submits that Allstate never conducted an "in-person" "arbitration Orientation Program" to notice Plaintiff of its alleged arbitration contract.

81.  The Molina Court held that the Coca-Cola Company Employees were also shown an "arbitration orientation video" to notice its employees of the implementation of the Coca-Cola Company arbitration contract.

82.  In opposition, Plaintiff submits that Allstate never showed him an "arbitration orientation video" to notice him of the alleged Allstate implementation of its alleged arbitration contract.

83.  The Molina Court held that the Coca-Cola Company provided its employees with a hard copy of the arbitration agreement "Frequently Asked Questions Document."

84.  In opposition, Plaintiff submits that Allstate never provided him with a hard copy of its alleged arbitration agreement "Frequently Asked Questions Document"

85.  The Molina Court held that the Coca-Cola Company provided its employees with a Hard Copy of the "Arbitration Power Point Presentation" shown at the arbitration orientation program.   We do not have any of those facts present here in Allstate's motion to compel arbitration before this Court.

86. In opposition, Plaintiff submits that this Court does not have before it that good faith, open and transparent fact pattern displayed to this Court in Allstate's Exhibit "A" through "F" and that when Plaintiff was "initially employed" by Allstate he never entered into a binding arbitration agreement with Allstate. Allstate never mailed a hard copy letter noticing Plaintiff about its alleged agreement to resolve all legal disputes through arbitration rather than through the courts, Allstate never mailed a hard copy "Arbitration Program Brochure" to Plaintiff, Allstate never mailed a hard copy of a "summary program description" to Plaintiff notifying him that if he filed a lawsuit against Allstate, the Allstate Insurance Company will ask the court to dismiss the lawsuit and refer it to arbitration. Allstate never conducted an in-person arbitration orientation program for Plaintiff. Allstate never showed an arbitration orientation video to Plaintiff. Allstate never provided Plaintiff with a hard copy of its "Frequently Asked Questions Document." Allstate never provided Plaintiff with a hard copy of any arbitration power point presentation.

## ALLSTATE DECLARATION OF EMPLOYEE MARY ANNE EMPLEO

87. Allstate in its Declaration of its employee Mary Anne Empleo, alleges that in October of 2019, Allstate rolled out its mutual arbitration agreements to Plaintiff and all of Allstate's more than 30,000 existing employees and Allstate employment candidates.

88. In opposition, Plaintiff submits that Allstate has failed to prove by a preponderance of the evidence that by it allegedly sending a one-time, single, solitary, mass email, on October 21, 2019, without any further mailing, literature or follow up email, that the

Plaintiff had clear, explicit, and unequivocal notice of Allstate's alleged contract and the terms and conditions allegedly set forth therein.

89. Allstate in its declaration of employee Mary Anne Empleo, alleges that it maintains a database of every completed mutual arbitration agreement, the records of which are maintained in the regular course of business.

90. In opposition, Plaintiff requests that this Court order Allstate to provide proof of its alleged record of the Plaintiffs completed mutual arbitration agreement.

91. Allstate in its declaration of employee Mary Anne Empleo, alleges that it has created a unique individual mutual arbitration agreement for each individual employee.

92. In opposition, Plaintiff requests that this Court order Allstate to produce proof of its alleged unique individual mutual arbitration agreement record of Plaintiffs alleged completed contract.

93. Allstate in its declaration of employee Mary Anne Empleo alleges that it allowed individual employees to affix a valid electronic signature to their respective mutual arbitration agreement that could only be associated with the specific employee.

94. In opposition, Plaintiff submits that this Court order Allstate to provide proof of the above and that Allstate has failed to prove by clear, explicit and unequivocal evidence that Plaintiff was allowed to affix a valid electronic signature to the alleged contract that could only be associated with him.

95. Allstate in its declaration of employee Mary Anne Empleo alleges that it created an audit trail that shows the date and time of every action taken with respect to every individual Allstate mutual arbitration agreement contract.

96. In opposition, Plaintiff requests that this Court order Allstate to produce clear, explicit and unequivocal proof of its alleged audit trail that shows the date and time of every alleged action taken by Plaintiff with respect to the alleged Allstate arbitration contract.

97. Allstate in its declaration of employee Mary Anne Empleo alleges that on October 21, 2019, Allstate sent out electronic mutual arbitration agreement contracts to Plaintiff and all its more than 30,000 exiting employees and that in order to simultaneously send unique mutual arbitration agreement contracts to Plaintiff and all of its more than 30,000 employees, Allstate used a "Robotic Processing Application" to create a customized package for Plaintiff and each individual Allstate employee.

98. In opposition, Plaintiff requests that this Court order Allstate to provide to this Court clear, explicit and unequivocal proof of its alleged customized mutual arbitration agreement contract package whereby it allegedly noticed Plaintiff of the contract and the terms and conditions contained therein.

99. Allstate in its declaration of employee Mary Anne Empleo alleges that on October 21, 2019, Allstate's email contained a hyperlink and that its system directed Plaintiff to the "Esign Consent Form" and that Plaintiff was required to scroll down, read the entire agreement, and then elect either to accept or to decline the terms of the "Esign Consent Form."

100. In opposition, Plaintiff requests that this Court order Allstate to provide to this Court clear, explicit and unequivocal proof that Plaintiff participated in each and every one of those above Allstate alleged required contractual steps.

101.    Allstate in its declaration of employee Mary Anne Empleo alleged that if Plaintiff

accepted the terms of the "Esign Consent Form" the software would then direct the

Plaintiff to his unique mutual arbitration agreement contract, where an instruction

would appear at the top of the mutual arbitration agreement contract advising Plaintiff

to "Please review and sign this Document by scrolling and clicking on the "Click to Sign"

or "Click to Initial" boxes. The system then would require the Plaintiff to scroll through

and read the entire Agreement and at the bottom of the mutual arbitration agreement

contract, Plaintiff would receive the option to "Click and Sign" the mutual arbitration

agreement contract. If Plaintiff selected the "Click and Sign" option, the software

would then provide Plaintiff with the option to "Accept" or "Decline" the mutual

arbitration agreement contract.

102.    In opposition, Plaintiff requests that this Court order Allstate to submit proof

that Plaintiff clearly, explicitly and unequivocally participated in the above alleged

Allstate required contractual steps.

103.    Allstate in its declaration of employee Mary Anne Empleo alleges that if Plaintiff

clicked "OK" to proceed with signing the mutual arbitration agreement contract, the

software made a "call out" to E-signature and the signature line of the mutual

arbitration agreement contract automatically populated with (1) that specific

employees' signature in the following format: "eSigned by Plaintiff, and (2) the date.

104.    In opposition, Plaintiff requests that the Court order Allstate to submit clear,

explicit and unequivocal proof that Plaintiff participated in the above set of Allstate

alleged facts.

105.     Allstate in its declaration of employee Mary Anne Empleo alleges that if Plaintiff

accepted the terms of the mutual arbitration agreement contract, a text box would

have appeared on the screen advising Plaintiff that he had completed signing the

mutual arbitration agreement.

106.     In opposition, Plaintiff requests that the Court order Allstate to submit clear,

explicit and unequivocal proof that Plaintiff participated in those Allstate alleged

required steps.

107.     Allstate in its declaration of employee Mary Anne Empleo alleges that if Plaintiff

accepted or declined the mutual arbitration agreement, that specific Agreement was

deemed "Completed" and once completed Plaintiff could then download the mutual

arbitration agreement to a desktop computer or laptop.

108.     In opposition, Plaintiff requests that the Court order Allstate to submit proof that

Plaintiff clearly, explicitly and unequivocally participated in those alleged Allstate

required steps.

### PLAINTIFFS LEGAL ARGUMENT

109.     A court must evaluate a motion to compel arbitration, under a standard similar

to the standard for a summary judgment motion.  If there is an issue of fact as to the

making of the agreement for arbitration, then a trial is necessary.  See Bensadoun v

Jobe-Riat, 316 F.3d 171-175 (2d Cir. 2003).

110.     If there is an issue of fact as to the making of the agreement for arbitration,

then a trial is necessary before a determination of arbitrability can be made. Brown v

Coca-Cola Enterprises Inc., 2009 U.S. Dist. LEXIS 35798, 2009 WL 1146441, at *1 n. 1 (E.D.N.Y. 2009), See (Allstate's motion Exhibit "A").

111.     Plaintiff submits that there are genuine issues of material fact that exist as to whether Plaintiff received clear, explicit and unequivocal notice of Allstate's alleged contract.

112.     Plaintiff submits that there are genuine issues of material fact as to whether there was a clear, explicit and unequivocal "meeting of the minds" between the Plaintiff and Allstate to form Allstate's alleged arbitration contract.

113.     When such a motion is opposed on the ground that no agreement to arbitrate has been made between the parties, a district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise.  See Mazza Consulting Group, Inc., v Canam Steel Corp., No. 08-cv-38 (NGG), 2008 U.S. Dist. LEXIS 32670.

114.     It is well settled under New York Law that arbitration will not be compelled absent the parties' clear, explicit and unequivocal agreement to arbitrate.  See Manigault v Macy's East, LLC, No. 07-4135-cv, 318 Fed. Appx. 6, 2009 U.S. App. LEXIS 6234, 2009 WL 765006, at *2 (2d Cir. March 25, 2009).

115.     The courts employ "ordinary principles of contract and agency" in order to determine whether the parties have agreed to arbitrate.  Thomson-CSF S. A. v American Arbitration Assn, 64 F.3d 773, 776-77 (2d Cir. 1995).

116.     To determine whether to compel arbitration, a court must decide whether the parties agreed to arbitrate.  Genesco, Inc.  v T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987).

117.    The obligation to arbitrate nevertheless remains a creature of contract.  Because arbitrator authority arises only when the parties agree in advance to that forum, a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.  Louis Dreyfus Negoce S.A.  v Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001), AT&T Techs., Inc v Communications Workers of Am., 475 US 643, 648 106 S. Ct. 1415. 89 L. Ed. 2d 648 (1986).

118.    The obligation to arbitrate depends on an agreement to arbitrate.  Arbitration is a matter of consent, not coercion, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (*AT&T Technologies, Inc. v Communications Workers*, 475 US 643, 648 [1986], *Inland Shoe Mfg. Co. v Pervel Indus.*, 81 AD2d 505, 505 [1st Dept 1981].

119.    No one may be compelled to arbitrate unless he has agreed to do so, *Matter of Brean Capital LLC v New Oak Capital LLC*, 46 Misc 3d 1203[A], 2014 NY Slip Op 51838[U], *3 [Sup Ct, NY County, Dec. 22, 2014].

120.    The principle that a party cannot be forced to arbitrate unless they agreed to do so by contract, and that the existence of an agreement to arbitrate is a question for a court, not the arbitrator.  Because an alleged agreement to arbitrate is a creature of contract, the ultimate question of whether the parties agreed to arbitrate is determined by state law" (*Bell v*

*Cendant Corp.*, 293 F3d 563, 566 [2d Cir 2002]; *Irving R. Boody & Co., Inc. v Win Holdings Intern., Inc.*, 213 FSupp2d 378, 381 [SDNY 2002].

121.    Allstate has the burden of demonstrating the existence of a valid agreement to arbitrate (*Matter of Allstate Ins. Co. v Roseboro*, 247 AD2d 379, 380 [2d Dept 1998]).

122.    To establish the existence of an enforceable agreement, there must be an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound, (*U.S. Bank National Association v Reddy*, 220 AD3d 967, 972 [2d Dept 2023].

123.    There must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms and conditions allegedly contained in the alleged contract and courts look to the basic elements of the offer and acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract, see *1912 Newbridge Rd., LLC v Liantonio*, 172 AD3d 962, 963-964 [2019], *Agosta v Fast Sys. Corp.*, 136 AD3d 694, 694 [2016], *see Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*, 93 NY2d 584, 589 [1999], see *26th St. Partners, LLC v Federation of Orgs. for the NY State Mentally Disabled, Inc.*, 182 AD3d 543, 543-544 [2020]).

124.    A party to an agreement may not be compelled to arbitrate its dispute with another unless the evidence establishes the parties clear, explicit and unequivocal agreement to arbitrate.  See *God's Battalion of Prayer Pentecostal Church, Inc. v Miele Assoc., LLP* (6 NY3d 371, [2006]), (*Matter of Waldron [Goddess]*, 61 NY2d 181, 183 [1984], See *Specht v Netscape Communications Corp.* (306 F3d 17 [2d Cir 2002]),

125.    Reasonable conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms are essential if electronic bargaining is to have integrity and credibility" (*id*. at 35; *see Starke v Square trade, Inc.*, 2017 WL 3328236, *5, 2017 US Dist. LEXIS 122599, *9-12 [ED NY, Aug. 3, 2017, 16-CV-7036 (NGG)], *affd* 913 F3d 279 [2d Cir 2019]).  *see Applebaum v Lyft, Inc.*, 263 F Supp 3d 454, 465 [SD NY 2017] applying New York law and denying motion to compel arbitration where notice of contract terms was insufficient to bind plaintiff.

**SUMMATION**

126.    Allstate has the burden of demonstrating by a preponderance of the evidence that Plaintiff had a clear, explicit and unequivocal intention to enter into Allstate's alleged arbitration contract.

27

127.    Allstate has the burden to prove by a preponderance of the evidence that plaintiff clearly, explicitly and unequivocally agreed to be bound by Allstate's alleged arbitration contract and its alleged terms and conditions.

128.    Allstate has the burden to prove by a preponderance of the evidence that Plaintiff had clearly, explicitly and unequivocally received notice of its alleged arbitration contract, and received notice documentation to review Allstate's alleged contract and all the alleged terms and conditions therein.

129.    Allstate has the burden to prove by a preponderance of the evidence that it provided Plaintiff with clear, explicit and unequivocal informative and relevant documentation that fully explained Allstate's alleged arbitration contract and its terms and conditions.

130.    The Plaintiff affirmatively denies that Allstate clearly, explicitly and unequivocally provided him with notice of its alleged arbitration contract and the alleged documentation of its alleged terms and conditions therein.

131.    Allstate's alleged internet contract and its attempt to bind all of its more than 30,000 employees, some of whom were inexperienced, unaware, and unsuspecting employees to arbitration agreements, must be declared in the interest of justice, to be null and void because Allstate does not clearly, explicitly and unequivocally prove by a preponderance of the evidence that Plaintiff and all of its more than 30,000 employees clearly, explicitly and

28

unequivocally had notice of and clearly, explicitly and unequivocally fully understood and agreed to enter into Allstate's alleged arbitration contract of adhesion.

132.    A reasonable examination of the objective manifestations of Allstate's intent to implement it alleged arbitration contract, without clear, explicit and unequivocal, proof of notice to Plaintiff and all of its more than 30,000 employees, proves that there is no showing that there was an objective meeting of the minds, mutual assent, or intent to be bound sufficient to give rise to a binding and enforceable arbitration agreement between Plaintiff, Allstate's more than 30,000 employees, and Allstate.

133.    Allstate's alleged single, solitary, one-time, simultaneous mass email, was a bad faith attempt by Allstate to require Plaintiff and its more than 30,000 employees to give up their fundamental right to a trial by jury and that Allstate attempt was contrary to the tenets of contract law, and the forfeiture of that right would merit considered reflection by Allstate employees and possibly the advice of counsel.

134.    Allstate's alleged one-time solitary mass email on October 21, 2019, was never intended by Allstate to clearly, explicitly and unequivocally, inform Plaintiff and all of Allstate's more than 30,000 employees of Allstate's alleged arbitration contract but was instead intended by Allstate to violate

the Plaintiffs and Allstate's more than 30,000 employees fundamental right to a jury trial with potentially major adverse and damaging implications and results.

135.    Allstate in its alleged email arbitration contract sought to deprive Plaintiff and its more than 30,000 employees of making a knowing, fully informed, and voluntary decision as to whether to consent to its alleged arbitration contract and waive a jury trial by the very nature of how Allstate chose to implement its alleged arbitration contract.

136.    Allstate attempted to force the Plaintiff, and its more than 30,000 employees to make an uninformed decision and enter into Allstate's attempted arbitration contract of adhesion, by giving them no choice but to accept Allstate's alleged arbitration contract or resign from their job's, give up their health and life insurance benefits, and their pensions, that most of them had earned by many years of long and faithful employment.

137.    Allstate's alleged notice of its alleged contract and of its terms and conditions, were not clearly, explicitly and unequivocally, presented to Plaintiff and its more than 30,000 employees in a clear, explicit and unequivocal, open, good faith, and conspicuously required manner.

## ALLSTATE HAS WAIVED ITS ALLEGED ARBITRATION POSITION

138.   Waiver is the intentional relinquishment of a known right.  See United States v Olano, 507 U.S. 724, 773 (1993).

139.   Allstate Insurance Company by its inaction, has acted inconsistently with its now alleged arbitration position and has previously waived its alleged arbitration position.

140.   In a previous employment action in March 2024, brought by plaintiff, Malachy P. Lyons, Jr., against the Allstate Insurance Company in Suffolk County Supreme Court, before the Hon. Linda Kevins, index no. 606001/2024, the Allstate Insurance Company waived its now alleged arbitration agreement contract defense claim and defended against that action by submitting a Motion to Dismiss on the merits, having never raised its now alleged arbitration agreement contract defense.  Allstate it that Motion to Dismiss also submitted a reply to Plaintiffs' opposition, in which it again never raised its now alleged arbitration agreement contract defense.  See Plaintiffs Exhibit 1.

141.   In that Suffolk County Supreme Court action, Allstate submitted a motion to dismiss on the merits, where also submitted exhibits and case law, plus a memorandum of law against the merits of Plaintiffs claim, and in support of the merits of Allstate's claim.  Allstate also submitted a reply to Plaintiff opposition, again Allstate never raised its alleged arbitration agreement claim.  See Plaintiffs Exhibit 1.

142.   Allstate also defended that action on a claim of improper service and Allstate never raised the issue of its alleged arbitration agreement.

143.   Now in this instant litigation before this Court, the Allstate Insurance Company, after failing to Answer Plaintiffs' Complaint in a timely manner and facing a default

judgment, has moved this Court to compel arbitration by now claiming for the first time the alleged existence of a non-existent arbitration contract.

144.    The Plaintiff submits that Allstate has waived any alleged arbitration defense no matter how non-existent and frivolous its alleged defense is because a party waives it right to arbitration if it knew of the right and acted inconsistently with that right. Erdman Co. v Phoenix Land & Acquisition, LLC, 650 F.3d 1115, 1117.

145.    A federal court cannot condition a waiver of the right to arbitrate on a showing of prejudice.  A federal court will commit an error if it conditions a waiver of the right to arbitrate on a showing of prejudice.  See Morgan vs Sundance, 596 U.S. May 23, (2022).

146.    Allstate has waived any alleged arbitration defense it now claims it allegedly had. A federal court may not create arbitration-specific variants of federal procedural rules, like those concerning waiver, See Moses H. Cone Memorial Hospital v Mercury Constr. Corp., 460 U.S. 1, 24.

147.    A court may not devise novel rules to favor arbitration over litigation.  See, Dean Witter Reynolds Inc. v Byrd, 470 U.S. 213, 218-221.

148.    The federal policy is about treating arbitration contracts like all others, not about fostering arbitration.  The text of the FAA makes clear that courts are not to create arbitration-specific procedural rules.  Section 6 of the FAA provides that any application under the statute, including an application to stay litigation or to compel arbitration, shall be made and heard in the manner provided by law for the making and hearing of motions.

## CONCLUSION

For the foregoing reasons, Plaintiff Malachy P. Lyons, Jr., respectfully requests that the Court deny Allstate's Motion to Compel Arbitration and deny Allstate's motion to stay this action.

In addition, for the foregoing reasons, Plaintiff respectfully requests that the Court, in the interest of justice, hold and declare Allstate's alleged mutual arbitration agreement contract null and void as against all of Allstate's more than 30,000 employees, and order any additional relief the Court deems appropriate.

Dated December 2, 2024                          Respectfully submitted,

                                                Malachy P. Lyons, Jr., Esq.

                                                1440 Ackerson Boulevard

                                                Bay Shore, New York 11706

                                                Tel: (631) 219-1505

                                                Plaintiff Pro se.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

MALACHY P. LYONS, JR.,

    Plaintiff,       Case No. 2:24-cv-03370

  v.            **PLAINTIFFS OPPOSITION**

ALLSTATE INSURANCE COMPANY,  *Electronically Filed*

    Defendant.     **CERTIFICATE OF SERVICE**

I, Malachy P. Lyons, Jr., Esq., hereby certify that:

1. I am the Plaintiff Pro se in this action.
2. On December 2, 2024, I caused a true and correct copy of Plaintiffs Opposition, including this certificate, and supporting Exhibit, to be served via U.S. Postal Service First Class Mail and electronic mail upon the following:

    Linda Wong, Esq.

    **WONG FLEMING**

    Americas Tower

    1177 6TH Avenue, 5th Floor

    New York, New York 10036

    Tel.: (212) 643-9668

    *Attorneys for Defendant Allstate Insurance Company*

Pursuant to 28 U.S.C. Section 1746, under penalty of perjury, the foregoing is true and correct.

Dated: December 2, 2024

               Malachy P. Lyons, Jr., Esq.


               Malachy P. Lyons, Jr.,

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

MALACHY P. LYONS, JR.,

          Plaintiff,

   v.

ALLSTATE INSURANCE COMPANY,

          Defendant.

Case No. 2:24-cv-03370

**PLAINTIFFS OPPOSITION**

December 2, 2024

The Honorable Judge Joan M. Azrak

United States Judge

United States District Court for the

Eastern District of New York

100 Federal Plaza,

Central Islip, NY 11722-9014

Dear Judge Azrak:

    I am the Pro Se Plaintiff in this action, I have not been able to retain the services of counsel. Please except my opposition to Allstate's motion to compel arbitration.

                        Very truly yours,

                        Malachy P. Lyons, Jr.,

CC:   The Honorable Magistrate Judge Arlene Linsay

       Defendant Allstate Attorney Linda Wong.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

MALACHY P. LYONS, JR.,

             Plaintiff,                     Case No. 2:24-cv-03370

      v.                              **PLAINTIFFS OPPOSITION**

ALLSTATE INSURANCE COMPANY,

             Defendant.

---

December 2, 2024

The Honorable Magistrate Judge Arlene Lindsay

United States Judge

United States District Court for the

Eastern District of New York

100 Federal Plaza,

Central Islip, NY 11722-9014

Dear Judge Azrak:

    I am the Pro Se Plaintiff in this action, I have not been able to retain the services of counsel. Please except my opposition to Allstate's motion to compel arbitration.

                                       Very truly yours,

                                         Malachy P. Lyons, Jr.,

CC:    The Honorable Joan M. Azrak

           Defendant Allstate Attorney Linda Wong.

# PLAINTIFF

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

---

In the Matter of the Application of
MALACHY PATRICK LYONS, JR.,

               Petitioner,

    -against-

NEW YORK STATE DIVISION OF HUMAN
RIGHTS, and ALLSTATE INSURANCE
COMPANY,

               Respondents.

For a Judgment Pursuant to Article 78 of the
Civil Practice Law & Rules,

Civil Action No. 606001/2024

---

## MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT ALLSTATE INSURANCE COMPANY'S CROSS-MOTION TO DISMISS THE PETITION

*By:*
Kelly C. Spina
Kimberly E. Wilkens
LITTLER MENDELSON, P.C.
A Professional Corporation
290 Broadhollow Road, Suite 305
Melville, New York 11747
631.247.4700
*Attorneys for Respondent*
*Allstate Insurance Company*

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF RELEVANT FACTS ................................................................... 2

I.    Factual background AND PROCEDURAL HISTORY ......................... 2

    A.    The Vaccination Mandate In December of 2021. ...................... 3

    B.    Petitioner's Request For A Religious Accommodation Is Granted. .......... 3

    C.    Petitioner Is Separated From Employment Due To His Failure To Comply With The Conditions Of His Accommodation. .......................... 4

    D.    Petitioner Files His Complaint With The Division And, After Investigation, The Division Finds No Probable Cause. .............................. 5

ARGUMENT ............................................................................................................. 6

THE PETITION MUST BE DISMISSED BECAUSE THE PETITIONER FAILS TO STATE A CAUSE OF ACTION. ...................................................................... 6

    A.    Standard of Review – Challenge To SDHR Determination. ..................... 6

    B.    Allstate Was Not Properly Served Warranting Complete Dismissal. ........ 8

    C.    Even If Allstate Was Properly Served, There Is No Merit To The Instant Petition Requiring Dismissal. ........................................................ 9

        1.    The Division's Good Faith Investigation Into Petitioner's Claims. ........................................................................................ 9

        2.    The Determination By The Division Is Rational. ........................ 10

    D.    The Division's Determination Must Be Affirmed As It Was Not Arbitrary, Capricious, Pr Irrational. ....................................................... 13

CONCLUSION ........................................................................................................ 14

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ackerman v. New York State Div. of Hum. Rts.*,
    197 A.D.3d 1110 (2d Dep't 2021) .................................................................9

*Matter of Baird v. New York State Div. of Human Rights*,
    100 A.D.3d 880 (2d Dep't 2012) ...................................................................6

*Cagino v. New York State Div. of Human Rights*,
    217 A.D.3d 1237 (3d Dep't 2023), *leave to appeal denied*, 40 N.Y.3d 909
    (2024) ..............................................................................................................7

*Carlino v. New York State Div. of Human Rights*,
    2016 N.Y. Misc. LEXIS 1510 (Sup. Ct. Queens Cty., Mar. 28, 2016) .......7

*Conte v. City of New York Dep't of Sanitation*,
    159 A.D.3d 640 (1st Dep't 2018) ..................................................................9

*Curto v. Cosgrove*,
    256 A.D.2d 407 (2d Dep't 1998) ...................................................................9

*Elie v. New York State Div. of Human Rights*,
    2023 N.Y. Misc. LEXIS 3446 (Sup. Ct. N.Y. Co., July 10, 2023)........11, 12

*Matter of Fulcher v. New York State Div. of Human Rights*,
    2018 N.Y. Misc. LEXIS 846 (Sup. Ct. Kings Co., Feb. 28, 2018)11

*Munoz v Reyes*,
    40 A.D.3d 1059 (2d Dep't 2007) ...................................................................8

*Garvey v. City of New York*,
    77 Misc. 3d 585 (Sup. Ct. Richmond Cty., Oct. 24, 2022)..........................11

*Gleason v. W.C. Dean Sr. Trucking*,
    228 A.D.2d 678 (2d Dep't 1996) ...................................................................9

*Matter of Isaksson-Wilder v. New York State Div. of Human Rights*,
    43 A.D.3d 921 (2d Dep't 2007) .....................................................................9

*Jiggetts v. MTA Metro-N. R.R.*,
    121 A.D.3d 414 (1st Dep't 2014) ..................................................................8

*Le Prevost v. New York State Div. of Human Rts.*,
    2023 N.Y. Misc. LEXIS 4316 (Sup. Ct. Kings Cty., Aug. 11, 2023) ...;....................................7

*Meyer v. Forster*,
    187 A.D.3d 918 (2d Dep't 2020) ...........................................................................................9

*Newby v. GVC II, Inc.*,
    2018 U.S. Dist. LEXIS 86110 (S.D.N.Y. Apr. 25, 2018).......................................................12

*Matter of Orosz v. New York State Div. of Human Rights*,
    88 A.D.3d 798 (2d Dep't 2011) .........................................................................................10

*Matter of Paster v. P'Ship for Children's Rts.*,
    159 A.D.3d 910 (2d Dep't 2018) .........................................................................................7

*Matter of Pell v. Board of Educ. Of Union Free School Dist. No. 1 of Towns of*
    *Scarsdale & Mamaroneck, Westchester County*,
    34 NY2d 222 (1975) ............................................................................................................7

*Matter of Phillips v. New York State Div. of Human Rights*,
    217 A.D.3d 1595 (4th Dep't 2023).......................................................................................7

*Siddiqui v. Dep't of Soc. Servs.*,
    7 A.D.3d 941, 942 (3d Dep't 2004) .....................................................................................8

*Warner v. General Counsel, State Div. of Human Rights*,
    2014 N.Y. Misc. LEXIS 1149 (Sup. Ct. N.Y. Cty., Mar. 13, 2024)........................................7

## PRELIMINARY STATEMENT

*Pro se* Petitioner, Malachy Patrick Lyons, Jr. ("Petitioner"), brings the instant Article 78 proceeding against Allstate Insurance Company ("Allstate" or the "Company"), and the New York State Division of Human Rights ("Division"), seeking a judgment annulling and reversing the "No Probable Cause" Determination and Order After Investigation issued by the Division on January 4, 2024 ("Determination"). This Petition arises out of Petitioner's August 2022 separation from employment as an attorney with Allstate due to his failure to comply with the Company's COVID-19 vaccination and testing policies. Petitioner alleges the Division's finding of No Probable Cause to believe he was discriminated against based on his age (DOB: 3/18/53) or religion (unspecified), or retaliated against for protected complaints, was erroneous as a matter of law, arbitrary and capricious, and/or irrational in that it, among other things, misapplied New York City's COVID-19 mandate. Allstate now cross-moves to dismiss the Petition on the basis that Allstate was not properly served, and, Petitioner's challenge is otherwise without merit and must be denied.

As set forth more fully below, a Division's Determination will not be overturned unless there is a showing that it was arbitrary and capricious or lacking a rational basis. Petitioner's instant challenge, which is nothing more than a dissatisfaction with the result, provides no sufficient legal basis to overturn the Determination. Following a careful investigation, during which Petitioner was represented by counsel[1] and during which Petitioner had a full and fair opportunity to rebut the factual averments and evidence submitted by Allstate – as reflected in his 71-page rebuttal to Allstate's Position Statement – the Division found that the evidence *did not* support a finding that Petitioner's separation was unlawful. Indeed, to the contrary, the Division determined Allstate's decision was legitimate, nondiscriminatory, and rational in that Petitioner

---

[1] Upon information and belief, we understand Petitioner at some juncture throughout the proceeding was represented by Counsel.

unreasonably refused to comply with the terms of the Company's clearly communicated COVID-19 vaccination and testing requirements. Specifically, while Petitioner was afforded a religious accommodation from the Company's COVID-19 vaccination requirement, Allstate required him to submit weekly COVID-19 testing and Petitioner flatly refused. The Division record confirms that Petitioner participated in every stage of the proceedings, which ended in a thorough and well-supported Determination of No Probable Cause. Accordingly, Petitioner cannot possibly show that the Determination was arbitrary and capricious, or that it lacked a rational basis and, as a result, the instant cross-motion must be granted and the Petition must be dismissed in its entirety.

## STATEMENT OF RELEVANT FACTS[2]

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or about June 12, 2017, Petitioner began his employment with Allstate, an insurance company, as a Senior Trial Attorney in Garden City, New York. *See* Petitioner's Exhibit "N," at 3-4. In his role, Petitioner managed a portfolio of active personal injury litigation matters involving Allstate and/or its insureds and affiliated entities, requiring regular court appearances throughout New York City's five boroughs. *See* Petitioner's Exhibit "A," at 9. Accordingly, an essential function of Petitioner's role was to appear in court, and conduct in-person business as needed, which included in-person attendance at hearings, trials, arbitrations, mediations, depositions, conferences, and any other required proceeding. *Id. See also* Petitioner's Exhibits "O," "C." At all times, Petitioner's role as a Litigation Services Attorney was an in-person position. *See* Petitioner's Exhibit "C," at 2. Indeed, Petitioner admitted that his role required him to "interact **in person** with customers, agents, co-workers, and/or sales partners OR . . . perform

---

[2] This Statement of Facts is derived from the material factual allegations set forth in the Petition, verified on March 8, 2024. Those allegations, but not the conclusions, will be deemed to be true solely for the purpose of this Cross-Motion to Dismiss.

field work." *See id.* (emphasis supplied).

A.    **The Vaccination Mandate In December of 2021.**

Due to the COVID-19 pandemic Petitioner's role temporarily shifted to a hybrid-remote schedule from 2020 through 2022. *See* Petition ¶¶ 16-17. In December 2021, New York City issued a city-wide vaccination mandate applicable to all private sector employees, such as Allstate, effective December 27, 2021. *See* Petitioner's Exhibits "Q," "R." As a result, all Allstate employees, including Petitioner, received notice of the impending city-wide vaccination mandate and were notified that each employee whose position required in-person work in New York City must submit proof of vaccination. *See* Petitioner's Exhibit "R." Petitioner failed to respond to this email, or otherwise submit proof of vaccination. *See generally* Petitioner's Exhibits "B," "O."

Two months later, on or about February 18, 2022, all Allstate employees who did not submit proof of vaccination received an email notifying them that they must submit proof of their receipt of at least one dose of the vaccination by March 11, 2022, or, alternatively, submit a request for a medical or religious exemption. *See* Petitioner's Exhibit "B." These employees were reminded that an essential function of their position included in-person work in the New York City area, and, as a result, a vaccination, or an exemption to a vaccination, was a condition of their continued employment with Allstate. *Id.* Employees were also informed if they did not qualify for an exemption, they could seek a transfer to a different position within Allstate that did not require in-person work in New York City. *Id.* Petitioner did not respond to this email, or otherwise submit proof of a vaccination or timely request an accommodation to the vaccination requirement. *See generally* Petitioner's Exhibit "C."

B.    **Petitioner's Request For A Religious Accommodation Is Granted.**

Approximately two weeks after the deadline to respond to the vaccination requirement, or submit an exemption request, Petitioner initiated a request for a religious exemption. *See*

Petitioner's Exhibit "C." Allstate approved Petitioner's request on the condition that he submit weekly COVID-19 test results to Allstate. *See* Petitioner's Exhibit "D." Petitioner was notified of this requirement three times: once on March 25, 2022, again on April 13, 2022, and again on April 19, 2022. *See* Petitioner's Exhibits "F," "G," "K." Petitioner failed to submit *any* COVID-19 test results to Allstate. *See generally* Petitioner's Exhibit "O." Petitioner instead objected to the testing requirement as unlawful and invasive. *See* Petitioner's Exhibit "M." Petitioner requested an additional accommodation to modify the essential job duties of his position to remove any requirement to perform in-person work in New York City. *Id.* Allstate could not accommodate this request due to the operational needs of the legal department and the essential duties of Petitioner's role as a litigation attorney with requirements to attend in-person business as needed. *See generally* Petitioner's Exhibit "O." At or around this time, Allstate attorneys handled over 40,000 active lawsuits from clients and customers across New York City and Long Island. *See* Petitioner's Exhibit "A," at 10. This included attorneys' in-person attendance as New York courts began scheduling in-person appearances, including hearings, conferences and trials. *Id.* Accordingly, any attorney anticipated to work in New York City, like Petitioner, was required to comply with the vaccine requirement, or weekly testing, in order to permit entry into courts and other public buildings in New York City. *Id. See also* Petitioner's Exhibit "O."

### C. Petitioner Is Separated From Employment Due To His Failure To Comply With The Conditions Of His Accommodation.

By August 2022, Petitioner had refused to comply with the conditions of his accommodation to submit weekly COVID-19 testing in lieu of vaccination and failed to obtain an alternate position that did not require in-person attendance within New York City. *See* Petitioner's Exhibit "O." Petitioner was the only one of approximately 77 Allstate attorneys who failed to comply with the vaccination, or exemption, policy, despite multiple opportunities to do so. *See*

Petitioner's Exhibit "A," at 10.  Given his flagrant refusal to meet this essential job requirement,

Allstate deemed Petitioner to have voluntarily resigned from his position.  *See* Petitioner's Exhibit

"O."  The reason for his separation was clearly communicated to Petitioner as follows:

> As Allstate has made you aware, your job duties as a Senior Trial
> Attorney . . . requires you to be available to perform in-person work,
> including in-court appearances, in the City of New York.  As you
> know, Allstate has maintained a policy whereby any employee
> whose job requires them to be available to conduct in-person work
> in New York City is therefore obligated to comply with the New
> York City's workplace vaccination requirement . . . [y]ou have not
> complied with the terms of your accommodation such that you have
> not submitted any COVID-19 tests to Allstate.  As such, you have
> been unavailable to conduct in-person work in New York City
> despite this availability being a condition of your employment.
> Your willful failure to meet the conditions of your employment,
> despite those conditions being known to you, represent a voluntary
> resignation of your employment.

*Id.*  Following his separation, Petitioner submitted numerous applications for employment as an

Allstate attorney.  Petition ¶ 91.  *See also* Exhibit "A," at 10.  Petitioner was not considered for

any such positions due to his prior misconduct and intentional violation of Allstate policies.

Exhibit "A," at 10.

### D.  Petitioner Files His Complaint With The Division And, After Investigation, The Division Finds No Probable Cause.[3]

On or about July 31, 2023, Petitioner filed his Complaint with the Division alleging he was

discriminated against based on his age (69 years old at the time of separation) and religion

(unspecified), and terminated in retaliation for his objections to Allstate's COVID-19 vaccination

and testing policies.  *See generally* Petitioner's Exhibit "N."  After conducting a thorough

investigation into Petitioner's claims, the Division issued a finding of No Probable Cause and

dismissed Petitioner's Complaint.  *See* Petitioner's Exhibit "A," at 4-7.  As outlined in the

---

[3] Upon information and belief, Petitioner's Charge was also cross-filed with the EEOC.

Determination, the Division's investigation included, but was not limited to, a review of all documentation submitted by the parties, which included: (1) Petitioner's Complaint; (2) Allstate's Position Statement and accompanying exhibits, including Petitioner's job description, the New York City COVID-19 vaccination mandate, communications between Petitioner and Allstate concerning his vaccination status and Allstate's policies, and Petitioner's religious accommodation, which set forth the good-faith, independent, legitimate and non-discriminatory reasons for Petitioner's separation; and, (3) Petitioner's 71-page rebuttal to Allstate's Position Statement. *See* Petitioner's Exhibits "A," "P," "E."

On January 5, 2024, the Division issued a Determination and Order After Investigation finding No Probable Cause in that Petitioner failed to demonstrate that Allstate engaged in an unlawful discriminatory practice. *See* Exhibit "A." Notably, the Division held that, because Petitioner filed his Complaint on July 31, 2023, only allegations occurring from July 31, 2022 through July 31, 2023 were considered. *Id.* Pursuant to the Division's policies and procedures, the Division did not conduct a hearing. *See generally id.*

On or about March 8, 2024, Petitioner, appearing *pro se*, commenced the instant proceeding against Allstate and the New York State Division of Human Rights requesting this Court reverse, annul, and set aside the Division's Order and Determination dismissing Petitioner's Complaint. *See generally* NYSCEF Dkts. 1-27.

<u>ARGUMENT</u>

**<u>THE PETITION MUST BE DISMISSED BECAUSE THE PETITIONER FAILS TO STATE A CAUSE OF ACTION.</u>**

**A.      Standard of Review – Challenge To SDHR Determination.**

The New York State Division of Human Rights is the administrative agency charged under New York State law with finding and rooting out unlawful discrimination in employment. *Matter*

*of Baird v. New York State Div. of Human Rights*, 100 A.D.3d 880, 881 (2d Dep't 2012). When a finding of No Probable Cause is rendered by the Division without a public hearing, as in the instant matter, the appropriate standard of review by a Court is whether the Division's Determination was arbitrary and capricious, or lacking a rational basis. *See Cagino v. New York State Div. of Human Rights*, 217 A.D.3d 1237, 1239 (3d Dep't 2023), *leave to appeal denied*, 40 N.Y.3d 909 (2024) ("Courts give deference to the [Division] due to its experience and expertise in evaluating allegations of discrimination, and will only disturb a determination of no probable cause if it is arbitrary [and] capricious or lacks a rational basis") (internal citation omitted); *Matter of Paster v. P'Ship for Children's Rts.*, 159 A.D.3d 910, 911 (2d Dep't 2018).

"The Arbitrary or capricious test chiefly 'relates to whether a particular action should have been taken or is justified * * * and whether the administrative action is without foundation in fact.'" *See Warner v. General Counsel, State Div. of Human Rights*, 2014 N.Y. Misc. LEXIS 1149, at *9 (Sup. Ct. N.Y. Cty., Mar. 13, 2024) (*quoting Matter of Pell v. Board of Educ. Of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 (1975)). So long as there is "some – indeed, any – rational basis or credible evidence" to support a determination, the Division's Determination must be upheld. *See Le Prevost v. New York State Div. of Human Rts.*, 2023 N.Y. Misc. LEXIS 4316, at *6 (Sup. Ct. Kings Cty., Aug. 11, 2023). Once a Court determines the "agency's conclusion has a 'sound basis in reason' the judicial inquiry is at an end and a reviewing court may not substitute its judgment for that of the agency." *See Warner*, 2014 N.Y. Misc. LEXIS 1149, at *9 (internal citations omitted); *Carlino v. New York State Div. of Human Rights*, 2016 N.Y. Misc. LEXIS 1510, at *23 (Sup. Ct. Queens Cty., Mar. 28, 2016) ("a court may not weigh the evidence, or substitute its judgment for that of the agency"); *Matter of Phillips v. New York State Div. of Human Rights*, 217 A.D.3d 1595, 1596 (4th Dep't

2023) ("Courts may not weigh the evidence or reject [SDHR's] determination where the evidence is conflicting and room for choice exists. Thus, when a rational basis for the conclusion . . . is found, the judicial function is exhausted") (internal citations omitted).

**B.    Allstate Was Not Properly Served Warranting Complete Dismissal.**

This Petition must be dismissed in its entirety as Petitioner failed to properly serve Allstate. A plaintiff has "the ultimate burden of proving by a preponderance of the evidence that jurisdiction over the defendant was obtained by proper service of process." *Munoz v Reyes*, 40 A.D.3d 1059 (2d Dep't 2007). *See also Jiggetts v. MTA Metro-N. R.R.*, 121 A.D.3d 414 (1st Dep't 2014) ("Petitioner's status as a *pro se* litigant does not excuse the defective service" (citing *Goldmark v Keystone & Grading Corp.*, 226 A.D.2d 143 (1st Dep't 1996)).

Section 312-A of the Civil Practice Law and Rules requires that, in the event a petitioner elects to serve a notice of petition and petition by mail, the service must be sent by first class mail and, further, include both a statement of service by mail and an acknowledgement of receipt. CPLR 312-A. The failure to include a statement of service by mail and an acknowledgement of receipt is fatal to proper and effective service, and warrants dismissal of the action. *Jiggetts v MTA Metro-N. R.R.*, 121 A.D.3d 414 (1st Dep't 2014) (affirming the dismissal of an Article 78 petition filed by a *pro se* litigant for lack of jurisdiction where service of petition did not include an acknowledgement of receipt); *Siddiqui v. Dep't of Soc. Servs.*, 7 A.D.3d 941, 942 (3d Dep't 2004) (same). Here, dismissal is warranted because Petitioner failed to properly effect service in accordance with the service rules clearly outlined in Section 312-A. *See generally* NYSCEF Dkts. 1-27. Specifically, Petitioner did not include a statement of service by mail nor did he include an acknowledgment of receipt. *Id.*, at  *See supra Matter of Jiggetts*, 121 A.D.3d 414.

**C.    Even If Allstate Was Properly Served, There Is No Merit To The Instant Petition Requiring Dismissal.**

Petitioner presents two unavailing arguments in support of his request that this Court reverse, annul and/or set aside the Division's Determination: (1) the investigation conducted by the Division was not rationally based on the evidence presented; and, (2) the Division misinterpreted applicable case law and therefore its Determination was "affected by errors of law". *See generally* Petition.  Both arguments fail to warrant the extreme relief requested.

**1.    The Division's Good Faith Investigation Into Petitioner's Claims.**

Initially, Petitioner criticizes the alleged "findings" of the Division and the evidence it chose to review. *See generally* Petition.  Such an argument is unavailing as it is well-settled that the Division has broad discretion in the method and manner in which it conducts its investigations. *See Ackerman v. New York State Div. of Hum. Rts.*, 197 A.D.3d 1110, 1111 (2d Dep't 2021); *Meyer v. Forster*, 187 A.D.3d 918, 919 (2d Dep't 2020); *Conte v. City of New York Dep't of Sanitation*, 159 A.D.3d 640, 641 (1st Dep't 2018).  A Court cannot substitute its own judgment for that of the Division. *See Matter of Isaksson-Wilder v. New York State Div. of Human Rights,* 43 A.D.3d 921, 992 (2d Dep't 2007) ("it is the function of the administrative agency, not the reviewing court, to weigh the evidence or assess the credibility of the witnesses") (*quoting Curto v. Cosgrove*, 256 A.D.2d 407 (2d Dep't 1998)).  Where a petitioner is afforded the "opportunity to present his case, and the record shows that the submissions were in fact considered, the determination cannot be arbitrary and capricious merely because no hearing was held." *Gleason v. W.C. Dean Sr. Trucking*, 228 A.D.2d 678, 679 (2d Dep't 1996) (citation omitted).

Here, Petitioner cannot dispute that he had the opportunity to present his case, submit relevant evidence and documents, and participate fully in the investigation conducted by the Division. *See generally* Petition.  Indeed, Petitioner filed his complaint with the Division, which

included 58 paragraphs containing detailed allegations in support of his claims (Petitioner's Exhibit "N"), along with a 72-page rebuttal to Allstate's position statement with exhibits (Petitioner's Exhibit "E"), and subsequently corresponded with Division staff by telephone and email, including the submission of additional written evidence. *See generally* Petitioner's Exhibit "A."

The Determination relies on "Investigator's Observations" which cite, among other things, specific paragraphs of the Complaint, Petitioner's job description, a 12/22/21 email, a 4/20/22 letter, and an 8/3/22 letter. *Id.*, at 10-11. These detailed citations make clear that the Division thoroughly reviewed and assessed the parties' submissions in reaching its conclusions.

Thus, Petitioner had a full and fair opportunity to participate in the underlying investigation and, as such, cannot claim the Division acted in an arbitrary and capricious manner merely because the ultimate outcome was not in his favor. *See Ackerman*, 197 A.D.3d at 1111 (affirming the Supreme Court's dismissal of petitioner's complaint, prior to a hearing, where the "record demonstrate[d] that the DHR conducted an adequate investigation of the petitioner's complaint that was neither abbreviated nor one-sided. The petitioner was afforded a full and fair opportunity to present his claim and supporting submissions, and to rebut the submissions made in opposition to his complaint"). *See also Matter of Gross v. New York State Div. of Human Rights*, 88 A.D.3d 798, 799 (2d Dep't 2011) (the court deferred to the Division's investigation, including its decision not to conduct a hearing for "contrary to the petitioner's argument, no hearing was necessary because the record does not demonstrate the existence of unresolved questions that required further scrutiny").

### 2.     The Determination By The Division Is Rational.

Second, Petitioner's disagreement with the Division's Determination is simply *not* a basis to overturn the Division's decision. Petitioner improperly asks this Court to re-read the record in

a manner preferable to Petitioner and set aside the Division's well-supported Determination for a new one. Petitioner's contention that the Determination is "affected by errors of law" rests heavily on the misapplied citation to *Garvey v. City of New York*. *See* Petition ¶¶ 110-112 (citing *Garvey v. City of New York*, 77 Misc. 3d 585 (Sup. Ct. Richmond Cty., Oct. 24, 2022)); Petitioner's Exhibit "T." Yet, *Garvey* bears absolutely no relevance to the case at issue. In *Garvey*, the court granted petitioner's Article 78 application overturning a governmental agency's decision to apply the vaccination mandate to *some set of its own public employees*, while setting it aside for other public employees within the same agency. *Garvey*, 77 Misc. 3d at 592-593. The *Garvey* court held that a "different decision for similarly situated people based on identical facts" is an "arbitrary and capricious action because identical unvaccinated employees were treated differently by the same governmental agency."[4] *See id.*

Here, Petitioner was employed by a private company, and there is no suggestion Petitioner was treated less favorably than any other similarly situated Allstate employee. Allstate's decision to enforce its own vaccination-or-test policy, bringing the Company into compliance with the New York City Mandate, is permissible. This is true even for an employee who could otherwise perform some of their role remotely, such as Petitioner. *Elie v. New York State Div. of Human Rights*, 2023 N.Y. Misc. LEXIS 3446, at *6-7 (Sup. Ct. N.Y. Co., July 10, 2023) (denying petitioner's Article 78 challenge of the company's decision to require their employee to perform in-office work as it is "not this Court's role to second guess" the company's assessment of its job requirements). Indeed, Allstate submitted to the Division that it issued its vaccinate-or-test directive to all employees working in the five boroughs of New York City, and Petitioner was the only one who

---

[4] Notably, while Petitioner's *Garvey* case is inapposite to the facts herein, it underscores the underlying need for COVID-19 precautions in the New York City area, such as the measures taken by Allstate in the instant proceeding. *See generally id.*, at 594 ("over 79% of the population in New York City are vaccinated").

deliberately and continuously refused to comply.

Petitioner does not identify any legal authority that Allstate could not require Petitioner to obtain weekly COVID-19 testing or how doing so could have been unlawfully discriminatory. As noted in its Basis for Determination, the Division found, "[w]hile Complainant may disagree with Respondent's interpretation of the requirements of the New York City Mandate, it is clear that Respondent advised Complainant that it was requiring him to submit weekly PCR test results, which he did not do" and "because Complainant was not in compliance, he was unable to perform an essential function of his position – being available for in-person assignments." *See* Petitioner's Exhibit "A," at 12.

Similarly, Petitioner fails to identify any legal arguments concerning his flawed age discrimination claim and instead regurgitates the same unpersuasive facts contained in the Complaint (i.e., after a November 2021 Company buy-out after, he became the "oldest employee assigned to the Garden City law office"). *Id.*, at 10-11. In addition to being time-barred, the Division correctly noted that, "[o]ther than providing this information, Complainant provided no other information related to his age, nor did he provide any evidence that his age was a factor in any of Respondent's decisions." *Id.*, at 12. This is insufficient to establish a claim of purported discrimination based on age. *Newby v. GVC II, Inc.*, 2018 U.S. Dist. LEXIS 86110, at *5 (S.D.N.Y. Apr. 25, 2018) (discussing plaintiff's underlying Article 78 proceeding which upheld the Division's finding of No Probable Cause to "believe petitioner's employer engaged in unlawful age discrimination . . . even though petitioner was 61 when he was terminated"). *See also Matter of Fulcher v. New York State Div. of Human Rights*, 2018 N.Y. Misc. LEXIS 846 (Sup. Ct. Kings Co., Feb. 28, 2018) (dismissing petitioner's article 78 petition alleging a claim of age discrimination).

**D.    The Division's Determination Must Be Affirmed As It Was Not Arbitrary, Capricious, Pr Irrational.**

Upon full review of the parties' submissions, the Division rationally, appropriately, and invariably determined there was No Probable Cause to believe that Allstate engaged in the unlawful discriminatory practices of which Petitioner complained. *See generally* Petitioner's Exhibit "A." Allstate articulated a legitimate, non-discriminatory reason for Petitioner's separation, namely his failure to comply with COVID-19 testing, which was an explicit condition of his religious accommodation to COVID-19 vaccination. *See id,* at 4-7 (determining Petitioner failed to establish a prima facie case of discrimination because the investigation revealed Allstate's employees, including Petitioner, "were subject to the New York City COVID-19 vaccination mandate . . . [and] as part of [Petitioner's] religious accommodation, while he was not required to get vaccinated, he was required to submit weekly [COVID-19] test results . . . [which he] refused to submit").[5]  On the other hand, Petitioner failed to articulate a connection between his termination and his age or his religion so as to give rise to an inference of discrimination. Similarly, Petitioner failed to articulate protected activity but, even assuming he did so, the Division nonetheless found the actions taken by Allstate were for legitimate, non-discriminatory and non-retaliatory reasons that were not pretext for discrimination based on any alleged protected characteristics or retaliation for any arguably protected conduct. Simply disagreeing with the Division's well-supported findings and rearguing the unsuccessful points advanced below utterly fails to establish the arbitrary and capricious showing needed to overturn the Determination.

---

[5] The Division determined that because Petitioner filed his complaint on July 31, 2023, his only viable allegations concerned events that occurred from July 31, 2022 through July 31, 2023. *See generally* Petitioner's Exhibit "A," at 5 ("Complainant filed the instant Complaint on July 31, 2023. Under the Division's applicable one year statute of limitations period, only allegations related to events occurring from July 31, 2022 through July 31, 2023 are considered herein").

## CONCLUSION

For all the foregoing reasons, Allstate respectfully requests that its cross-motion to dismiss the Petition be granted, that Petitioner's Article 78 Petition challenging the Division's Determination be denied in all respects, and that judgment be entered for Allstate, along with such other and further relief as the Court deems just and proper.

Dated: April 10, 2024              Respectfully submitted,
Melville, New York
                                   LITTLER MENDELSON, P.C.

                                   By: _____
                                       Kimberly E. Wilkens
                                       Kelly C. Spina
                                       kwilkens@littler.com
                                       kspina@littler.com
                                       290 Broadhollow Road, Suite 305
                                       Melville, NY 11747
                                       Telephone: 631.247.4700
                                       Facsimile: 631.293.4526

                                   *Attorneys for Respondent*
                                   *Allstate Insurance Company*

## WORD COUNT CERTIFICATION

I hereby certify that the annexed Memorandum of Law of Respondent Allstate Insurance Company in Support of its Cross-Motion to dismiss the Petition contains 4,264 words, excluding the caption and signature lines, and complies with Rule 202.8-b of the Uniform Civil Rules for the Supreme Court and the County Court.

Dated: April 10, 2024
       Melville, New York

Kimberly E. Wilkens